# Tennessee Coal, Iron & Railroad Company *v.* Herndon, Adm'r, &c.

### Action for Injuries to Employe Resulting in Death.

1. *Plea of contributory negligence.*—A plea in an action for the negligent killing of plaintiff's intestate while an employe of the defendant, alleging that the intestate was himself. guilty of negligence which proximately contributed to the injury resulting in his death, is demurrable as stating merely a conclusion of law.

2. *For injuries resulting in death personal representative, alone, can sue under employer's act.*—No one but the personal representative being authorized under the employer's liability act to sue for injuries resulting in death, a suit by a mother under said act for the death of her minor son, is no bar to a suit by such personal representative on the same cause of action.

3. *General charge properly refused where different inferences may be drawn from the evidence by the jury.*—Where plaintiff's intestate, who was employed by defendant to assist in emptying cinder pots, was killed while assisting in dumping cinder out of a pot, which turned with such violence as to throw him in the molten mass of cinder, and it was shown that there were no safety chains to the pot, though it was usual to have them, and there was also, evidence that where a crust had formed on the cinder in the pot, it could be emptied more safely without safety chains; the general charge for the defendant was properly refused, as it was a question for the jury whether safety chains should have been used.

4. *Want of due care in selecting between safe and dangerous mode of performing duty.*—Where a person selects a dangerous way to perform

a duty when there is a safe way, knowing the way selected to be dangerous, or if the danger is apparent or obvious, then he assumes the risk and is guilty of contributory negligence, but the fact that he was injured because of the way selected, when if he had selected the other way he would not have been injured, does not, alone. fix upon him contributory negligence.

5. *Same; case at bar*—Where there was testimony that plaintiff's intestate was standing on the trucks which supported a cinder pot he was emptying, and that he should have been standing on the ground when trying to dump or turn the pot, and there was evidence for plaintiff that owing to the condition of the cinder and the nature of the ground, it was necessary to stand on the trucks, it was proper to refuse a charge that if the safer place to stand while dumping the cinder was on the ground. and intestate undertook to dump the same from a more dangerous position, the verdict must be for the defendant; as such charge tended to impress the jury with the idea that there was no evidence that the pot could not have been dumped from the ground, and also as misstating the rule which applies when there are two ways of performing a duty and the injured party selects the more dangerous way.

6. *Measure of recovery in suit by personal representative of minor.* In an action under the employer's act by the personal representative of a minor employe for injuries resulting in death. the probability of his intestate's marrying, if he had lived, and of his having children born who might have survived him and inherited his estate, is too remote and conjectural to be considered by the jury in estimating the amount of recovery.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

The appellee, John G. Herndon, as administrator of the estate of Thomas Page, sued appellant to recover damages for injuries to the said Thomas Page, resulting in his death, which were alleged to have been caused by the negligence of the defendant, the Tennessee, Coal, Iron & Railroad Company. There was judgment for the plaintiff in the sum of $2,450, and the defendant appeals.

The rulings of the Circuit Court on the pleadings are sufficiently shown in the opinion. The testimony for the plaintiff tended to show that his intestate, at the time of his death, was engaged in the service of the defendant as fireman on an engine which drew cinder pots from the pit in its furnace, where they were loaded, to the dumping ground; that at times it was plaintiff's intestate's duty to assist in unloading the pots when full of cinder; that when the accident occurred which resulted in his death the deceased was assisting the regular "dumper" in turning the cinder out of the pots, when the pot turned with such violence as to jerk him from his position on the trucks and threw him into the molten mass of cinder.

The evidence for the plaintiff further tended to show that

there had been difficulty in removing the pot from the pit, and that on account of the delay in so moving it a hard crust had formed over the top of the cinder in the pot between four and four and one-half inches deep; and that when the pot tilted the crust not being broken the pot was carried with such violence and force as to turn it completely over. It was also shown by the testimony for the plaintiff that on this partiular pot there were no safety chains, and that there were only two trunnion bolts when in fact there should have been five; that the defendant's employes who were superior to the plaintiff's intestate, and who had charge of the cinder pots were made cognizant of these defects before the accident. The testimony for the defendant tended to show that at the time of the accident the plaintiff was standing on the trucks which supported the cinder pots when in fact he should have been standing on the ground in his effort to turn it, and that after the crust had formed on the top of the cinders, the rules of the company required the dumper, whom the defendant was assisting, to break the crust before undertaking to turn out the cinder. There was also evidence for the defendant tending to show that in cases where there was a crust formed over the top of the molten cinders it was less dangerous not to have the safety chains. These respective contentions on the part of the plaintiff and defendant, were supported by a great deal of evidence in behalf of each.

Upon the examination of a witness for the plaintiff he testified that upon being told by the man whose duty it was to repair the cinder pots to get a pot off of the hill, he did so, and got the one which was used by the plaintiff's intestate at the time of the injury; that he discovered that there were no safety chains on the cinder pot in question, and that he told this to the repairer. The plaintiff then asked the witness the following question: "What was it" (the cinder pot) "carried there for?" (on the hill). The defendant objected to this question, the court overruled the objection, and the defendant excepted. The witness answered that it was carried there "for repairs," that "we never carried them up on the hill, unless they were out of repair."

Upon the examination of the engineer who was on the engine that drew the cinder pot, on the occasion of the plaintiff's intestate's injury, he was asked the following question by the plaintiff: "What was done with the pots when they got out of repair, if anything." The defendant objected to this question, the court overruled this objection,

[Tennessee Coal, Iron & R. R. Co. v. Herndon, Adm'r, &c.]

and the defendant excepted. The witness answered, "they were taken up to the repairing track on the hill."

There was testimony for the plaintiff showing that he was 16 years old at the time of his death, that he earned $1.50 per day; that he spent about $30.00 per year in clothes, that his board cost between $14 and $18 per month, and that he was industrious and saving. The American Mortality Tables were introduced, and showed that at the time of the plaintiff's intestate's death his natural expectancy of life was 43.3 years.

After the introduction of all the evidence the defendant, in writing, requested the following charges, and separately excepted to the court's refusal to give each of them as asked: (1) "That if the jury believe the evidence they must find for the defendant under the second count of the complaint." (2) "That if the jury believe the evidence in this case, they must find for the defendant." (3) "That if the jury believe from the evidence that the safer place for the dumpers to stand while dumping the slag from the pot was on the ground or road bed, and that the plaintiff's intestate undertook to dump or assist in dumping said slag from another and more dangerous position, when they could have dumped the same by standing on the ground, then if you believe if they had stood upon the ground, the plaintiff's intestate would not have been injured, I charge you that your verdict must be for the defendant." (4) "The court charges the jury that under the evidence in this case, the plaintiff can not recover as damages, as much as seven thousand dollars, if you believe the plaintiff is entitled to recover at all of the defendant." (5) "The court charges the jury that they can not give the plaintiff as much as seven thousand dollars, if the jury should find a verdict for the plaintiff." (6) "The court charges the jury that the plaintiff is not entitled to recover as much as five thousand dollars under the evidence in this case." (7) "That if the jury believe from the evidence that had plaintiff's intestate not been killed he would probably have married and have had children, and that such children would have survived him, then if you believe that plaintiff is entitled to a verdict, the damages which you find can only be nominal." (8) "That as the evidence fails to show any dependence upon the plaintiff's intestate, if the jury believe that the plaintiff is entitled to a verdict, the measure of damages which plaintiff can recover is only that amount which the jury may believe from the evidence, the present heirs and distributees of said intestate would have probably received had he lived and not been killed and in estimating

[Tennessee Coal, Iron & R. R. Co. v. Herndon, Adm'r, &c.|

such amount, which the present heirs and distributees of said intestate would have probably received at his death, had he not been killed as alleged in the complaint, the jury may look to the probability, if there was such a probability, of the said intestate's marrying and having children, and the probability of such children surviving him, and taking his estate instead of the present heirs and distributees." (9) "That if the jury believe that the plaintiff is entitled to a verdict, the measure of damages is what plaintiff's intestate's present heirs and distributees would likely have received from his estate, and in considering that question, they may look to the probability of said intestate, if he had not been killed, marrying and having children, and if you believe that if he had lived, he would have married, and left children, the damages which the plaintiff can recover is merely nominal." (10) "That if the jury believe from the evidence that had plaintiff's intestate not been killed that he would probably have married and had children, who would have survived him, then I charge you that if you believe the plaintiff is entitled to a verdict, the damages should be nominal for in such case the present heirs and distributees would not have recovered any thing had he lived."

HEWITT, WALKER & PORTER, for the appellant.

LANE & WHITE, for the appellee,

COLEMAN, J.—The action is under the employer's liability act, and was brought to recover damages for injuries sustained by deceased, and which caused his death. The complaint consists of three counts, each alleging defects in the ways, works and machinery used for removing cinder or slag from iron furnaces to a place of waste. The defects complained of are clearly stated in the complaint, the first count, averring a deficiency in the number of trunnion bolts, and that those used were in a defective condition; the second count, that there were no safety chains, to the pot or vessel, in which the cinder or slag was removed; and the third count, averred that the defects, in the trunnion bolts, and the absence of safety chains, concurred in causing the injury.

The third plea of the defendant averred generally "that the plaintiff's intestate was himself guilty of negligence which proximately contributed to his alleged injury." A demurrer was sustained to this plea on the grounds, that the plea did not definitely state, in what the contributory negligence consisted,

but merely averred contributory negligence generally, and this ruling of the court is assigned as error. We have held that under our system, pleadings in damage suits consist of but little more than averments of conclusions. Many pleas in form like the one under consideration, have passed this court, unchallenged, but there had been no objection raised against the plea in the trial court, and were regarded by us as a plea in short by consent. In the case of *Phœnix Ins. Co. v. Moog*, 78 Ala. 301, this court held a plea to be bad which consisted wholly of a mere conclusion of law. There should be a succinct statement of facts, relied upon as a cause of action, and also in stating the grounds of defense. The court did not err in sustaining the demurrer to this plea.

The defendant pleaded specially, in bar of the present action, that plaintiff's intestate was a minor at the time of his death, and that prior to the bringing of the action, plaintiff's mother brought suit against the defendant, to recover damages for the killing of her son, and that in both suits the cause of action was the same. A demurrer was sustained to the special plea, and this is assigned as error. A copy of the declaration in the suit by the mother is attached to the special plea, and made a part of it. An examination of the declaration shows that the complaint in the two cases are precisely alike, except that in one, it is averred that deceased was a minor, that his father was dead, and that plaintiff was the mother. The negligence averred is precisely the same, and both suits were brought under the employer's act. It has been settled, that no one was authorized to sue under the employer's liability act to recover damages for injuries, which caused death, except the personal representative. We need not repeat the argument.—*Lowell v. De-Bardelaben.* 90 Ala. 13; Section 2590 of the Code. It has also been expressly decided, that under the employer's act the personal representative could not recover for the time of the minority of the deceased, where it appeared that the parents of the deceased minor were entitled to and received the wages earned by him, and this presumption of law arises in favor of the parents, until otherwise established.—*Ala. Conn. Coal & Iron Co. v. Pitts,* 98 Ala. 285; *Williams v. R. R. Co.,* 91 Ala. 635; 9 So. Rep. 77. It being apparent from the face of the pleadings, that the mother could not maintain the action brought by her, under the employer's act there was no error in sustaining the demurrer to the special plea. The act of Jan. 27, 1885—Acts of 1884-5, p. 99, and which was codified as section 2588 of the Code of

VOL. C.

1886—which gave a right of action to parents, for the death of a minor child caused by a wrongful act or omission," permitted the bringing and the maintaining of such an action by a personal representative only, "in the case of the death" of the parents. This limitation, in *haec verba*, was omitted in the codification, and has given rise to some confusion. In the case of *L. & N. R. R. Co. v. Williams, supra*, we had occasion in part to construe section 2588 of the Code. Considered further in connection with section 2589 and the employer's act, section 2590, and the constructions placed upon these sections, quere ? Can a personal representative sue under section 2588 of the Code except as provided in the original act"—in case of the death of the parents ?" The recovery under this section is wholly for their benefit, or in case of their death, after the injury, for the benefit of their estate, and not for distribution as provided in section 2589 and 2590, *supra*. There were two objections to questions propounded by plaintiffs to witnesses, and the overruling of the objections are assigned as error. These assignments are not referred to in brief of counsel, and we presume are not insisted upon. One of the questions may be objectionable in form, but the answer disclosed a material and relevant fact. Moreover the same facts were testified to in response to question without objection. The evidence in both instances tended to show knowledge of the defects averred in the complaint.

We are of opinion there was no error in the refusal of the court to give the instructions requested by the defendant upon which errors are assigned.

Charge No. 1, refused, instructed the jury to find for the defendant under the second count of the complaint and Charge No. 2, instructed the jury to find for the defendant generally. It was fairly proven in this case, that there were no safety-chains in the pot. The evidence for the defendant tended to show, that when the slag became chilled on top, so that it would not pour or run out the pot could be emptied more safely without than with safety-chains. This was one phase of the evidence. We are not prepared to say that under the evidence in this case, the jury were not authorized to infer differently. The reason given for the opinion that the pot could be emptied more safely without safety-chains, seems to be, that the pot would tilt entirely over and leave the frame work or trucks upon which the pot rested, upon the track, whereas if there had been chains, the momentum given to the pot, would have carried the frame work or trucks over with it. The jury

[Tennessee Coal, Iron & R. R. Co. v. Herndon, Adm'r, &c.]

were not compelled to take this view of the testimony. The safety-chains might have prevented the pot from going over altogether. That was their purpose. Possibly if the safety-chains had held the pot to a proper position, there would have been no such momentum or jerk as to throw deceased over on the hot slag or cinders. These were questions for the jury and the charge was properly refused.

Charge No. 3, was properly refused. It was calculated to impress the jury that there was no evidence before them tending to show, that the pot could not have been dumped, by persons standing on the ground, whereas there was evidence tending to show, that on account of the condition of the road bed and of the slag, it was necessary to stand on the plates. It is further objectionable in stating the rule, which applies when there are two ways of performing a duty, and the injured party selects the more dangerous way. The fact that the party was injured because of the way selected, when if he had selected the other way, the injury would have been avoided, alone, does not fix upon him contributory negligence. The result is not the true test. If a party selects a dangerous way to perform a duty when there is a safe way, knowing the way selected to be dangerous, or if the danger "is apparent" or "obvious" then he assumes the risk, and is guilty of contributory negligence. The charge fails to state the principle correctly, and was properly refused.—*L. & N. R. R. Co. v. Orr*, 91 Ala. 548.

The charges which limited the recovery to a certain amount, need not be considered, as the finding of the jury did not exceed the amount specified. We would say however, that it would be hazardous for the court in a damage suit upon such evidence as was introduced to prescribe and limit definitely the amount of recovery. The charges refused, which were predicated upon a probability of deceased marrying if he had lived, and of his having children born to him who might have survived him and inherited his estate, were all properly refused. These are remote and purely conjectural contingencies and can not be considered by a jury in estimating the amount of recovery.

We find no error in the record available to appellant. Affirmed.