173 So. 64

**WADE v. BRISKER.**

**5 Div. 244.**

Supreme Court of Alabama.

March 11, 1937.

Oakley W. Melton, of Wetumpka, and Grover C. Walker and Reynolds & Reynolds, all of Clanton, for appellant.

586

Hill, Hill, Whiting & Rives, of Montgomery, and Huddleston & Jones and Holley, Milner & Holley, all of Wetumpka, for appellee.

GARDNER, Justice.

Plaintiff's intestate, Tee Brisker, was killed by a truck driven by one George McCloud, who was employed in delivering ice manufactured at the Wetumpka Ice Company, an ice plant owned and operated by defendant, J. Q. Wade. One Hall, who was manager of the ice plant, employed McCloud and owned the truck.

Defendant insists Hall was an independent contractor, and that he could not be held to liability for the negligence of the truck driver. The trial court instructed the jury that under the proof defendant would be responsible for the negligence of the truck driver, and thus gave for the plaintiff the affirmative charge upon the question of agency, submitting for the jury's consideration only the matter of liability growing out of the charge of negligence. We entertain the view the trial court correctly so ruled.

The authorities relied upon by defendant relating to independent contractors have been carefully examined, and are readily distinguishable on the facts. United States C. I. P. & F. Co. v. Fuller, 212 Ala. 177, 102 So. 25; Republic Iron & Steel Co. v. McLaughlin, 200 Ala. 204, 75 So. 962; Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A.L.R. 617; General Exchange Ins. Corp. v. Findlay, 219 Ala. 193, 121 So. 710; Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74; General Refrigeration Sales Co. v. Taylor, 229 Ala. 479, 158 So. 314; Taylor v. General Refrigeration Sales Co., 231 Ala. 469, 165 So. 572; Bugg v. Sanders, 219 Ala. 129, 121 So. 410.

Defendant, in his argument, would separate the sale of ice from its manufacture, and treat the case as involving only the sale. But the business was one and inseparable. The manufacture of the ice could not prove profitable without its sale, and there could be no sale without the manufacture. The business must be considered as one related whole. So considered, the following facts appear without dispute:

Defendant owned the ice plant, the real estate and all equipment, maintaining the same in running order, and paying all current bills such as telephone and the like. He paid for the license to operate the business, that is, the license for manufacturing the ice and selling it. Hall was the manager, and was paid $50 per month as salary, and was to manufacture the ice and deliver the same, furnishing the trucks and their upkeep, and employing the drivers. Hall "sells on a fifty-fifty proposition. He gets fifty-fifty of the sales from this plant. * * * He pays the truck drivers and he also pays the man for making the ice at the plant," the man who fills the buckets in which the ice is made. The business is run largely on a cash basis, with occasional credit slips of short periods only. Ice is sold at the

plant as well as by truck. As money would be taken in, Hall would use some to pay bills, gasoline and expenses of like character, and the balance he deposited in the bank to the credit of the Wetumpka Ice Company. Hall would make tickets of these expenditures, and would have settlement with defendant every two weeks; these tickets being accepted by defendant as representing such expenditures. The money in the bank was subject to checks only by defendant or his son, and while Hall was to get 50 per cent. of the sales, yet he had to pay the drivers out of his part in the bank. When needed, ice was delivered to defendant at his plants in Clanton and Selma, and at times for strawberry shipments. True Hall employed the truck drivers and gave directions as to their routes; but the delivery of ice was only one essential feature of the business.

In short, as expressed by Hall, he and defendant "just agreed on the ice business," and that business consisted in the manufacture as well as the sale of ice. Defendant furnished the entire capital outlay, except the trucks, and Hall supplied the labor, both as to the manufacture and the sale of the ice. Each was equally interested in the net profits, defendant as to any return whatever on his investment, and Hall as to any compensation beyond his agreed salary of fifty dollars a month.

There seems to have been nothing said as to sharing in the losses, and perhaps section 9372, Code of 1923, is to be given consideration. Fred Gray Cotton Co. v. Smith, 214 Ala. 606, 108 So. 532.

But we think it clear enough, under the circumstances here disclosed, the authorities relied upon by defendant do not sustain his theory that Hall was an independent contractor. And if he was an agent of defendant with an interest in the profits as additional salary, this would not relieve defendant of liability under the circumstances above outlined. Tennessee Coal, Iron & R. Co. v. Hayes, 97 Ala. 201, 12 So. 98.

The line of demarcation between a partnership or joint adventure is shadowy and often difficult to discern, though many courts make the distinction that joint adventure usually concerns only a single transaction. Keiswetter v. Rubenstein, 235 Mich. 36, 209 N.W. 154, 48 A.L.R. 1049, and note; 33 Corpus Juris 842. Some of our recent cases have dealt in a general way with the question. Crescent Motor Company v. Stone, 211 Ala. 516, 101 So. 49; Whiddon v. Malone, 220 Ala. 220, 124 So. 516; Newell Contracting Co. v. Berry, 223 Ala. 109, 134 So. 870.

But whatever the relationship may be technically designated, whether a special partnership (47 Corpus Juris 643), or joint adventure (33 Corpus Juris 842), the parties entered into a joint enterprise, and as to third persons (McDonnell v. Battle House Co., 67 Ala. 90, 42 Am.Rep. 99), each became the agent of the other in the prosecution of the common enterprise, and liable for omissions and faults in regard thereto. Our case of Hackney v. Dudley, 216 Ala. 400, 113 So. 401, suffices as an authority for this conclusion.

We therefore think the court committed no error in regard to the instructions to the jury on the question of agency.

■ Assignments of error 29, 30, and 31 deal with the refusal of charges J, K, and L, requested by defendant, relating to the fact that the damages sought are punitive only. But their substance was clearly embraced in charge 1, given for defendant, and, in no event, could prejudicial error intervene.

■ While an agent's declaration is not competent evidence against the principal unless made in prosecution of the principal's business within the scope of the agent's authority, and with reference to and explanatory of some act or transaction (Hackney v. Dudley, supra; Teague v. Alabama Coca-Cola Co., 209 Ala. 205, 95 So. 883; General Refrigeration Sales Co. v. Taylor, 229 Ala. 479, 158 So. 314), yet this rule has no application to an impeachment of the agent as a witness by showing a statement out of court contradictory to his testimony. Such was the purpose of the testimony referred to in assignments of error 128 and 130, and the rulings thereon were free from error.

We have here discussed the meritorious questions presented on this appeal. The few remaining assignments argued are so clearly free from prejudicial error as to require no separate treatment.

Our conclusion is there is no reversible error shown, and that the judgment should be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.