31 So.2d 88

## PEOPLES et al. v. SEAMON.

### 3 Div. 468.

Supreme Court of Alabama.

June 19, 1947.

Steiner, Crum & Weil and Sam Rice
Baker, all of Montgomery, for appellants.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee.

FOSTER, Justice.

This is an action for the death of a minor child brought by the administrator of his estate. The complaint does not allege whether the child left a parent surviving.

The defendant plead (No. 3) that Leonard E. Seamon (who is the administrator suing as plaintiff) is the father of the said child, and that at the time of the accident, for which suit is brought, he, said Leonard E. Seamon, the father, was guilty of negligence in caring for said child, which negligence proximately contributed to his injury and death.

Plaintiff demurred on three grounds. The first was general; the second and third raised the point that in a suit by the administrator, the negligence of the father is not available as a defense. The court sustained that demurrer and the ruling is assigned as error.

The plea, by the facts alleged, makes section 119, Title 7, Code, applicable as the basis of plaintiff's action rather than section 123, Title 7. It was brought, as alleged in the plea, by the father as administrator of the estate of the minor, and within six months. But that is immaterial. Alabama Fuel & Iron Co. v. Denson, 208 Ala. 337, 94 So. 311; McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291.

When a minor child is killed by the wrongful act of another, and he leaves surviving his father, the damages recoverable are for the benefit of the father, where the suit is by the father personally or by an administrator, Tennessee Coal, Iron & R. Co. v. Herndon, 100 Ala. 451, 14 So. 287; White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R.A.,N.S., 568; City of Birmingham v. Crane, 175 Ala. 90, 56 So. 723; Ex parte Corder, 222 Ala. 694, 134 So. 130; Benson v. Robinson, 223 Ala. 85, 134 So. 799; McWhorter Transfer Co. v. Peek, supra, unless the father has by desertion or disability ceased to perform the parental duty of maintenance, or become disqualified (section 118, Title 7, Code), as when the minor child has married and been emancipated. McWhorter Transfer Co. v. Peek, supra. It was said in Louisville & Nashville R. R. v. Bogue, 177 Ala. 349, 360, 58 So. 392, 393, 396: "As now reconstructed in the new Code, it (now substantially as in section 119, supra), is evidently designed to furnish a complete system for all actions for the death of a minor child," meaning when a parent survived.

Those cases also hold that if the suit is by the administrator of the minor leaving a father in the exercise of parental care, he is acting as a quasi trustee for the father, and the recovery is not for the estate of the child nor his distributees. Therefore if the deceased child leaves such a parent, the suit is controlled entirely by section 119, supra, and section 123, supra, has no application. There is nothing in the case of Taylor v. City of Clanton, 245 Ala. 671, 18 So.2d 369, which is intended to conflict with the foregoing authorities.

Our cases hold that in a suit by the parent in his capacity as such under section 119, supra, his contributory negligence is a good defense. Alabama Utilities Service Co. v. Hammond, 225 Ala. 657, 144 So. 822; Alabama Power Co. v. Stogner, 208 Ala. 666, 95 So. 151; Alabama G. S. R. Co. v. Dobbs, 101 Ala. 219, 12 So. 770.

In the case of Alabama G. S. R. Co. v. Burgess, 116 Ala. 509, 22 So. 913, the suit was by the administrator for the death of an infant, and was said to be under section 2589, Code of 1886 (section 123, Title 7, Code of 1940). It was said that the negligence of the parent would not be available as a defense, but it would be available in a suit by the parent under section 2588 of that Code (section 119, Title 7, Code of 1940).

In that case no emphasis is made of the fact that the administrator was the father of the infant or whether the suit was under one or the other statute. But it seemed to imply that a suit by the administrator was not available under section 2588, Code of 1886, though it was otherwise provided.

In the case of Southern Railway Co. v. Shipp, Adm'r, 169 Ala. 327, 53 So. 150, the opinion starts by stating that the suit is by the administrator under the homicide statute to recover damages for the death of

plaintiff's intestate who was his minor son. It is stated (169 Ala. at page 333, 53 So. 150) that the action is not for the benefit of the father but for the distributees of the estate, of whom the father may be one. It is said (169 Ala. at page 334, 53 So. 150) that a parent who brings an action in his own right for the death of his intestate will not be allowed to recover if his own negligence contributed to his death; and the statute, referring to section 2486, Code of 1907 (section 123, Title 7, Code of 1940), gives the administrator the same right of action that the infant would have had if death had not resulted. That provision was not in section 2485, Code of 1907 (section 119, Title 7, Code of 1940), but was in section 2486 (section 123, Title 7, Code). And further that since contributory negligence of the parent would not defeat a suit by the infant had death not resulted, it is not a bar to an action under that statute, section 2486, Code of 1907. Provision was made for a suit to be brought by the administrator under section 2485, Code of 1907, as under section 119, Title 7, Code, but that suit was treated as being under section 2486 (section 123, Title 7, now). This Court had previously held that a suit under section 26, Code of 1896 (2485, Code of 1907; 5695, Code of 1923; section 119, Title 7, Code of 1940), by an administrator is wholly for the parent's benefit, and the appointment of an administrator is a statutory designation or appointment of a quasi trustee to sue for damages belonging to the parent. White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R.A., N.S., 568. This authority was cited to support that principle in City of Birmingham v. Crane, 175 Ala. 90, 56 So. 723: although it was also there said, citing the Shipp case, supra, that when the suit is by the administrator of a minor whose parent was living, the negligence of the parent was not a good defense.

In the case of Benson v. Robinson, 223 Ala. 85, 134 So. 799, a suit was instituted by the father necessarily under section 5695, Code of 1923 (section 119, Title 7, Code), and we held that the court correctly refused to allow an amendment to show that he sues as administrator, because thereby there was no effectual change in plaintiff's status, since in either event the recovery was for the sole benefit of the father, relying on White v. Ward, supra, and Tennessee Coal, Iron & R. R. v. Herndon, supra.

Both sections 119 and 123, Title 7, Code, as did their predecessors, authorize suit by the administrator. But it is not available for the administrator to select either section 119 or 123 as the basis of his right of action. Both statutes cannot apply to the same situation with the right of plaintiff to select one or the other as he sees fit. State v. Summer, 248 Ala. 545, 28 So.2d 565; Patterson v. Jefferson County, 238 Ala. 442, 191 So. 681.

■ We adhere to the principle stated in our cases that when the death of a minor is wrongfully caused, and he leaves a parent surviving, who is not disqualified under section 118, section 119, and not section 123, supra, has application, and the damages recoverable are solely for the benefit of that parent, who may sue in his own name, or if he becomes administrator may sue as such for his sole benefit.

■ We cannot adhere to the theory that a father by electing to be administrator, or causing another to be administrator, and suing as such, rather than as the parent under section 119, supra, his contributory negligence is no defense, whereas it would be a defense in a suit by the parent personally, when the damages recoverable by such administrator would belong to such parent solely to the same extent as if the suit were by him personally.

The case of City of Birmingham v. Crane, supra, has not been followed on that question in such a situation, and we think did not correctly apply the principle of contributory negligence. The earlier cases proceeded as under section 123, rather than 119, supra, when there was an administrator, even though a parent survived the death of the child. Our later cases have not followed that theory, and the result is that when a parent survives and is qualified, section 119 is the only available statute, and the recovery is solely for the benefit of that parent, and his contributory negligence precludes a recovery by him or for his sole benefit.

The demurrer to plea 3 should not have been sustained, and for doing so it is necessary to reverse the judgment.

We could stop this opinion here, but for the purpose of another trial, we will refer to some other contentions made by appellant.

The suit is against Edwards and Peoples, and in two counts. Count 1 alleges that the defendants were engaged in the business of operating an automobile on Finley Avenue, a public street in Montgomery. Count 2 alleges that defendant Edwards, the agent, servant or employee of defendant Peoples, was in charge and control of an automobile on said Finley Avenue.

Appellant contends that the situation disclosed does not prove either count 1 or 2, but shows that Edwards was a lessee under a verbal lease sale contract of the taxi and operating it for himself not as an agent of Peoples nor as a joint adventurer with him.

The evidence shows that Peoples had owned the automobile and had used it as a taxi and had a city license as such. That the city had adopted a rule that they would not transfer an existing taxi-cab license to anyone who was not then in the taxi business operating three or more taxis, and would not issue new licenses. So that Peoples not being able to transfer his license to Edwards not then under license, turned over to Edwards his taxi on a commission basis of thirty-five per cent to Edwards and sixty-five per cent to Peoples, who was to pay all expenses, and when he had paid Peoples $500 the taxi was to belong to Edwards.

Peoples owned the taxi and held the license. His taxi was operated by Edwards under Peoples' license. It had painted on it "American Cab Co." One Bruner had a place on Moulton Street, where he had a telephone and owned some cabs under that name. Other drivers paid him terminal fees to wear his name and get calls over his telephone. Peoples bought this cab from one of the Bruners who was called to the Army, and it had "American Cab Co." painted on it. Before this accident, American Cab Company went out of business, and Peoples had the only cab painted as "American Cab" in town, "No 5," and "just still let it go on, as the insurance was listed at the city hall and everything." He drove the cab after he laid by his crop, until the last of July or August, when he had to go back to his farm. Edwards had been driving for the "Liberty" people. "I (Peoples) kept trying to get him to take the cab. He drove it one week on a thirty-five percent commission. He turned in pretty good I thought. I asked him about selling it to him. I was tired of taxis. * * * I told him just go ahead on a thirty-five percent basis and when he turned me in $500.00 he could have the whole works whether he could get the transfer or not and that was the way the cab was running when the accident happened." Edwards testified that he agreed to buy the cab for $500.00, payable as stated. The license could not be transferred, but since Bruner was drafted, the O. P. A. made the city hall give Peoples Bruner's license. Peoples testified that he never after he turned it over to Edwards had any control or possession of the cab or drove it or controlled it in any manner. But it had painted on it "American Cab Co. No. 5," when it was operated by Edwards.

We now refer to some applicable principles.

It is said that if there was nothing else but a contract of lease and conditional sale where one (Peoples) was to be paid a percentage of the receipts until he received a certain amount ($500.00), and had no control or right to control its operations, (and did not so represent to the public) it could not be said to be a joint adventure or that the relation of master and servant existed. Braverman v. Hart, Sup., 105 N.Y.S. 107; Magruder v. Yellow Cab Co., 4 Cir., 141 F.2d 324, 152 A.L.R. 516; McDonnell v. Battle House Co., 67 Ala. 90, 42 Am.Rep. 99.

It is well understood that a joint adventure contemplates a mutual right of control by both or all such parties. 48 Corpus Juris Secundum 810, note 77; Crescent Motor Co. v. Stone, 211 Ala. 516, 101 So. 49; Whiddon v. Malone, 220 Ala. 220, 124 So. 516. The creation of that relation fixes the legal status of the parties to the

public, although one may in fact surrender such right to the other insofar as their mutual relations are concerned. But the public would not be controlled by such arrangement.

But where one furnishes the motor vehicle and maintains it and the other operates it, gathers the passengers and collects the fares which were to be divided pursuant to the agreement, they were engaged in a money making occupation to which each made a contribution; and it creates a joint adventure (though one gives over the actual control to the other). Hackney v. Dudley, 216 Ala. 400, 113 So. 401; Wade v. Brisker, 233 Ala. 585, 173 So. 64; see, also, Meridian Taxicab Co. v. Ward, 190 Miss. 119, 186 So. 636, 120 A.L. R. 1346, anno. 135. And though between the parties their relation may have been that of a lease sale contract, their relation to the public may have been such as exists between joint adventurers or master and servant.

For there is a principle given effect in Cargill v. Duffy, C. C., 123 F. 721, 727, that if a cab owner having a city license puts a driver in the cab having driver's license to whom he furnishes a badge, the relation is that of master and servant sofar as relates to the public whatever may be their relation as between themselves. The court observed:

"It seems clear that, under this ordinance, when the defendant placed this licensed cab in the custody and control of this driver, for him to use during the day for the purpose for which licensed, and placed on such driver the badge issued by the city that went with it, and which he contracted with the municipal authorities should be issued only to a driver representing the owner, he made such driver his representative, agent, or servant, and so held him out to the world, and is estopped as to this plaintiff from asserting the contrary or setting up the secret contract; and it also seems clear that he must be responsible for the negligence of such agent or servant in running the cab, irrespective of the declaration of the ordinance that he shall be responsible for such driver, that is, the acts of such driver. The defendant complied with the law, accepted its terms and benefits, having full knowledge of the law, and sent out this horse, harness, and licensed cab in charge of this driver, upon whom he placed notice to the world that such driver represented him, and that he (the owner of the cab) was responsible for the acts of such representative. In the cab itself the defendant had fixed the notice giving his name as owner, and the number of his license, corresponding to the number on the badge which he had placed on the breast of the driver."

It was also said in Denver R. G. R. Co. v. Gustafson, 21 Colo. 393, 41 P. 505, 506, when a person "holds out to the public one (another) as engaged in his service, he is liable, as a master, for the negligence of such servant, when the act or failure constituting the negligence comes within the apparent scope of the servant's employment, even though the person for whom the service is rendered has not employed or paid the servant."

On the question of agency, the fact that after the contract with Edwards for the sale and operation of the car Peoples continued to carry liability insurance on account of its operation, would probably be material on authority of Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757; Ex parte Rowell, 248 Ala. 80, 26 So.2d 554, but the court sustained the objection to it, and as to it we have no question on this appeal.

The question is, quoting from Cargill v. Duffy, supra, was the cab "managed by a driver upon whom he (the owner) had placed a badge of authority, which said to such injured person, 'This driver represents the owner of the cab, and for the acts of the driver such owner is responsible' "?

From proof of ownership of the cab by Peoples, nothing more appearing, the presumption is that it was being operated by one as his servant or agent in the line and scope of his authority. But this is an administrative presumption and takes the place of proof, and ceases to be effective when evidence of a contrary situation is offered. Craft v. Koonce, 237 Ala. 552, 187 So. 730; Western Union Tel.

Co. v. Gorman, 237 Ala. 146, 185 So. 743; Alabama Power Co. v. McGehee, 228 Ala. 505, 154 So. 105.

In the light of the foregoing principles, we think, the question was one for the jury.

Upon the question of negligence, the rule is that a motorist must exercise due care to anticipate the presence of another on the highway so as not to injure him, and is negligent if he fails to discover a person in the highway whom he could have discovered in the exercise of due care in time to avoid injuring him; and on approaching a vehicle standing in the highway ahead in his path he must exercise due care to observe what persons are about it and to avoid injuring them. Copper v. Agee, 222 Ala. 334, 132 So. 173; Harbin v. Moore, 234 Ala. 266, 175 So. 264.

Although there is no one who saw how the injury occurred, both its cause and the negligence of the driver may be established by circumstantial evidence as long as the circumstances are proven and are not themselves presumed. Harbin v. Moore, supra; Griffin Lumber Co. v. Harper, 247 Ala. 616(4), 25 So.2d 505.

In this case no one is shown from the evidence to have seen how the child came to be under the car with its head injured, but not crushed by the wheels, he was discovered to be so immediately after the stoppage of it, he was last seen (and that by his father) about the street on the right side of the approaching car as it approached. It was a paved street, twenty-seven feet wide, with sidewalks, and was closely built along its side with residences. The jury could find from the circumstances that the child came to be under the car by being struck down by the front of the car approaching slowly, and that he did not get under the running board on the right while it was moving, where the running board was ten or twelve and one-half inches from the ground. Edwards says he was looking ahead, and saw no child at all. There is evidence that he said he was looking for house numbers. But he was either looking ahead, as he should have done, or looking for house numbers and

not ahead. If the child was struck by the front of the car as it was moving very slowly, almost in the act of stopping, as the jury would be justified in finding, the question of whether Edwards exercised due care to observe and see if anyone was about the parked car ahead or in or about the path of his car, and not injure him was a jury question, and properly left to them.

We think the question of whether Edwards and Peoples were coadventurers or servant and master, as respects the public, and whether Edwards was negligent in causing the injury were proper questions for the jury. But that there was error in sustaining demurrer to plea 3, which necessitates a reversal of the judgment.

Reversed and remanded.

All the Justices concur.