120 So.2d 381

**DANIEL CONSTRUCTION COMPANY**

v.

**L. C. PIERCE.**

4 Div. 869.

Supreme Court of Alabama.

Oct. 29, 1959.

Rehearing Denied May 19, 1960.

Robt. B. Albritton, Albrittons & Rankin, Andalusia, for appellant.

Prestwood & Prestwood, Adalusia, for appellee.

**526**

GOODWYN, Justice.

Appellant, Daniel Construction Company, was a general contractor building a steam power plant at Gantt, Alabama. Royce F. Pierce, a minor, 17 years of age, the son of appellee, L. C. Pierce, was employed by a subcontractor doing the brick and tile work on the job. Both the subcontractor and Royce were subject to the provisions of the Alabama Workmen's Compensation Act (Code 1940, Tit. 26, § 253 et seq., as amended). Royce, while rolling a wheelbarrow loaded with mortar along a scaffolding, fell to a brick wall and then to a concrete floor, thereby causing injuries resulting in his death several days afterwards.

The father brought this suit against the general contractor pursuant to § 119, Tit 7, Code 1940, to recover damages for the wrongful death of his said minor son.

As last amended, the complaint consisted only of count two, as follows:

"Count Two:

"The plaintiff, suing as the Father of Royce F. Pierce, a minor under the age of 21 years, deceased, claims of the defendant Daniel Construction Co., a corp., the sum of $125,000.00 as damages for that on heretofore towit, the 28th day of June, 1954, the defendant was the general contractor in charge of constructing a steam power plant building at Gantt, Alabama, and the plaintiff's minor son was working at said construction project as an employee of a subcontractor, with the consent of and at the invitation of the defendant, and while so working plaintiff's minor son as a proximate result of negligence of defendant in failing to keep its works, ways, and scaffolding, upon which plaintiff's minor son was invited to work, in a reasonably safe condition slipped and fell 60 feet to a brick ledge and thereupon received severe personal injuries from which he died, all to the plaintiff's great damages as aforesaid, hence this suit.

"Plaintiff's said minor son, Royce F. Pierce, was not survived by any dependent or dependents entitled to benefits under the laws of the Workmen's Compensation Act of Alabama, or any dependent whatever."

The jury returned a verdict in favor of appellee for $45,000, upon which verdict judgment was duly rendered. This appeal was taken from that judgment after the trial court overruled appellant's motion for a new trial.

The questions presented by those of the 54 assignments of error here argued and insisted upon, are thus summarized in appellant's brief:

I.

"The Appellee suing as the father of the deceased employee subject to the provisions of the Workmen's Compensation Laws, cannot maintain this suit against Appellant under Section 119, Title 7, of the Code, since the right, if any, to maintain the action is vested exclusively in the personal representative of the decedent in the absence of any dependents, by virtue of Sections 272 and 312 as amended, Title 26 of the Code."

II.

"The trial court committed reversible error in allowing, over Appellant's objection, highly prejudicial testimony

tending to show that Appellant was indemnified by an insurance company."

### III.

"The several arguments of Appellee's counsel to the jury were so improper and highly prejudicial to Appellant that they were of that class of argument the poisonous effect of which could not be eradicated from the minds of the jury by any admonition from the trial judge and its refusal to grant Appellant's several motions for a mistrial because of the prejudicial nature of such arguments constituted reversible error."

### IV.

"Under the undisputed evidence in the case, the Appellant was entitled to the affirmative charge."

### V.

"Appellant's requested charge in writing No. 26 states, in substance, the correct proposition of law that when the death of a minor is wrongfully caused and he leaves a parent surviving who is not disqualified under Section 118 of Title 7 of the Code, the damages recoverable are solely for the benefit of that parent and its refusal by the trial court was error."

### VI.

"Appellant's motion for a new trial should have been granted because

"(a) the verdict of the jury was contrary to the law and the evidence;

"(b) the verdict was contrary to the great preponderance of the evidence;

"(c) the verdict was excessive and the result of bias, passion and prejudice against Appellant;

"(d) the trial court erred in overruling Appellant's several motions for a mistrial because of improper and highly prejudicial argument of Appellee's counsel to the jury;

"(e) the instructions given to the jury by the Court in connection with the grossly improper argument complained of were insufficient to remove their influence from the minds of the jury;

"(f) the cumulative effect of the improper questions and arguments was calculated to inject the poison of bias and prejudice in the minds of the jury. They created an atmosphere of bias and prejudice which no remarks of the court could eradicate."

Our conclusion is that we would not be warranted in reversing the case on any of these grounds. However, we entertain the view that the verdict is excessive, which will necessitate a reversal unless appellee makes a remittitur, as herein provided for.

We proceed to a discussion of our reasons for these conclusions.

### I.

The first question presented is whether the suit was properly brought by the father. Appellant's insistence is that it could only have been brought by the son's administrator, in view of § 312, Tit. 26, Code 1940, as amended by Act No. 635, appvd. Oct. 9, 1947, Gen.Acts 1947, p. 484. This section authorizes recovery of damages by an "employee, or his dependents in case of his death", from a party other than the employer, "where the injury or death for which compensation is payable under article 2 of this chapter [which deals with elective compensation under the Workmen's Compensation Law] was caused under circumstances also creating a legal liability for damages on the part" of such third party "whether or not such party be subject to the provisions of article 2 of this chapter." Act No. 635 also repealed § 311, Tit. 26. In this case, as already noted, the deceased minor son left no dependents surviving him. For this reason, says appellant, only the

son's administrator can maintain the suit because of the following provision of § 312, added by the 1947 amendment:

"In the event such injured employee has no dependents, his personal representative in the event of his death may bring suit against such other party to recover damages without regard to article 2 of this chapter."

Our problem is to determine whether the legislature intended, in amending § 312, to take away from the father the right to sue given him under § 119, Tit. 7, Code 1940. It is our view that it was not so intended and that the suit was properly brought by the father.

■ In the first place we do not think there is anything in amended § 312 clearly indicating an intention to take away the father's already existing right to sue expressly given by § 119, Tit. 7. As said in Goodman v. Carroll, 205 Ala. 305, 306, 87 So. 368, 369:

"Among the accepted rules of statutory construction, here as well as generally elsewhere, are these:

"The presumption is that 'the Legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication; * * * that it is in the last degree improbable that the Legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law without expressing its intention with irresistible clearness. * * *'"

■ There is still another reason why there can be no objection to the suit being brought by the father. We have held that the damages recoverable under § 119 in a suit brought by the father belong to the father. As said by a full court in Peoples v. Seamon, 249 Ala. 284, 288, 31 So.2d 88, 90:

"We adhere to the principle stated in our cases that when the death of a minor is wrongfully caused, and he leaves a parent surviving, who is not disqualified under section 118, section 119, and not section 123, supra, has application, and the damages recoverable are solely for the benefit of that parent, who may sue in his own name, or if he becomes administrator may sue as such for his sole benefit."

We have also held that there is no real difference between a suit brought by a father individually and one brought by him as his son's administrator. Peoples v. Seamon, supra; Benson v. Robinson, 223 Ala. 85, 86, 134 So. 799. In the Benson case the suit was brought by the father under § 5695, Code 1923, now § 119, Tit. 7. It was there held that the court correctly refused to allow an amendment to show that the father sued as administrator because thereby there was no effectual change in plaintiff's status since, in either event, the recovery was for the sole benefit of the father. See Peoples v. Seamon, supra; White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R.A., N.S., 568; Tennessee Coal, Iron and R. Co. v. Herndon, 100 Ala. 451, 14 So. 287.

Even assuming § 312 requires a suit for the wrongful death of a minor without dependents to be brought by the minor's administrator, still we do not think, under our liberal system of pleading, that the instant suit should be dismissed simply because it was brought by the father in his individual capacity and not as his son's administrator. As already noted, in either event he would be the sole beneficiary of any recovery had under § 119.

II.

■ One of appellant's witnesses, Mrs. Voncile Thompson, testified on direct examination concerning a statement made to her by Royce's mother a few days after his death. Mrs. Thompson was employed by an attorney at Andalusia. She testified that she had gone to Mrs. Pierce's residence to interview her in connection with a work-

men's compensation case which the attorney was handling for Julian Gunter, the subcontractor and Royce's employer. The unsigned statement, put to writing by the witness at the time of the interview, was admitted in evidence over appellee's objection.

On cross-examination of this witness the following occurred:

"Q. Mr. Reid [witness' employer] was representing the insurance company and you were carrying out his instructions in the course of an investigation for an insurance company?

"Mr. Albritton: We object, not on the grounds that it affects us at all, but it has no bearing on the case as to Mr. Gunter's compensation.

"The Court: Yes, you asked her about it yourself.

"Mr. Albritton: I asked her about workmen's compensation.

"The Court: You asked her about the coverage. Overrule the objection.

"Mr. Albritton: We except.

"A. I remember it was a compensation claim, but I was carrying out Mr. Reid's instructions, yes.

"Q. Now Mrs. Thompson, Mr. Reid at that time was representing and actively investigating this case also for another insurance carrier, wasn't he?

"Mr. Albritton: We object to that.

"The Court: I overrule the objection. It shows her interest in the case.

"Mr. Albritton: We except.

"A. I don't remember. I'm sorry.

"Q. To refresh your recollection, don't you remember that?

"Mr. Albritton: We object to counsel refreshing her recollection along those lines.

"The Court: Overrule your objection. It is cross examination of your witness."

On further cross-examination the witness was permitted to testify, over appellant's objection, that she remembered "there was another company involved", a "liability carrier."

Appellant insists that these rulings constituted error to reverse. We are unable to agree.

It must be remembered that this was appellant's own witness, placed on the stand to give testimony undoubtedly considered by appellant to be hurtful to appellee's case. In so testifying she thereby became subject to searching questions on cross-examination going to her interest in the case.

It is apparent that the testimony was allowed by the trial court as having some bearing on the witness' interest in the case. We have said that "it is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony." Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 612, 64 So.2d 594, 598. As there stated:

"* * * Both our appellate courts have approved the principle stated in 2 Wigmore on Evidence, 2d Ed., § 949, p. 232: 'The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place.' Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141, 144; Sowell v. State, 30 Ala. App. 18, 199 So. 900. And for emphasis we repeat the oft-stated rule that the latitude and extent of such cross-examination is a matter which of necessity rests largely within the sound judicial discretion, which will not be revised on appeal except in extreme cases of abuse. Such cross-examination may even pertain to irrelevant and

immaterial matters as bearing on the memory, accuracy, credibility, interest or sincerity of the witness."

Of like import, and applicable here, is the following from Mobile City Lines v. Alexander, 249 Ala. 107, 114, 30 So.2d 4, 10:

" * * * It is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice, or partiality concerning the matters about which he is testifying. Alabama Power Co. v. Gladden, 237 Ala. 527, 187 So. 711. The party producing a witness may not shield him from such proper cross-examination for the reason that the facts thus elicited may not be competent upon the merits of the cause. We think this line of questioning was proper as tending to affect the credibility of the witness. The objections interposed were general and the evidence being admissible for the purpose above stated, the trial court correctly overruled the objections. * * * "

The trial judge was on the scene. We are not prepared to say that he so grossly abused his discretion in allowing the stated cross-examination as to authorize this court to pronounce reversible error in his rulings.

### III.

Appellant interposed objections to several portions of the argument to the jury made by counsel for appellee. The entire argument is not set out in the record. However, the portions objected to, and here insisted on as being improper and highly prejudicial, are thus stated in appellant's objections to the argument, which are in the record, viz.: "That Daniel Construction Company is saying that because this was a poor man's son that he should not recover"; "that we come up here with eight different pleas as an escape hatch to ruin our liability in this case"; "that the boy's life may not mean anything to Daniel Construction Company"; "if the jury brings out a verdict less that $50,000 it wouldn't be any more than a mosquito bite to this defendant."

The trial court sustained the objection to the argument in each instance and instructed the jury to disregard it. But, says appellant, the argument in each instance was of that class the poisonous effect of which could not well be eradicated by an admonition from the trial court; that it was, in each instance, and certainly when considered cumulatively, so prejudicial in nature as to call for granting appellant's several motions for a mistrial and its motion for a new trial.

■ In deciding questions of this sort there can be no hard and fast rule applicable in every case. Each question must be decided in the light of the peculiar facts and circumstances involved, and the atmosphere created, in the trial of each particular case. Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 461, 113 So. 403; Alabama Power Co. v. Goodwin, 214 Ala. 15, 17, 106 So. 239; Ashworth v. Alabama Great R. Co., 211 Ala. 20, 25, 99 So. 191; Anderson v. State, 209 Ala. 36, 43, 95 So. 171, 178. In the last cited case it is said that "no ironclad rule exists by which the prejudicial qualities of improper remarks or argument of counsel can be ascertained in all cases, much depending upon the issues, parties, and general circumstances of the particular case."

As already noted, all of the argument is not included in the record. Thus we have no way of knowing the context in which the several remarks were made. Cf. Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 612(3), 64 So.2d 594, supra.

■ The trial court recognized the impropriety of the argument by sustaining appellant's objections thereto and instructing the jury to disregard it. The question, then, is whether the argument was so highly improper as to be beyond the cure of the court's instructions. In the light of the record as a whole, the general tenor of the trial, and the presumptions in favor of the trial court's rulings, we are not prepared to say that the argument was ineradicable.

In one instance the trial court disagreed with appellant as to the propriety of appellee's argument. It appears that the argument concerned the failure of appellant to produce at the trial an accident prevention manual demanded by appellee. The court based its ruling on the ground that the argument was a "reply in kind" to argument made by appellant. See Smith v. Reed, 252 Ala. 107, 111(4), 39 So.2d 653; Louis Pizitz Dry Goods Co. v. Yeldell, 213 Ala. 222, 223, 104 So. 526; Howell v. Smith, 206 Ala. 646, 648, 91 So. 496. Since appellant's argument is not set out in the record, we have no way of determining whether the trial court erred in so ruling.

## IV.

As already noted, Royce Pierce, at the time of receiving his fatal injury, was an employee of J. M. Gunter, a subcontractor for laying the brick and placing and installing the limestone and structural glazed tile. It is without dispute that Royce fell from a scaffold while rolling a wheelbarrow loaded with mortar for use in such work, thus causing his fatal injury. There is evidence supportive of a finding that he fell from a point where a "patent" or stationary scaffold joined to a "swinging" scaffold. In falling he hit a brick wall and from there fell to a concrete floor.

Under the contract between Gunter and appellant (the general contractor), appellant was to "furnish and erect the swinging scaffolding, all of the necessary materials, and will furnish hoisting equipment and operate the same for the distribution of the materials" to be installed by Gunter. Gunter was to do "all necessary moving of the scaffolding as required during the progress of the work and dismantle same at the completion" of his work. It is contended by appellant that these provisions placed on Gunter the responsibility of furnishing and erecting the "patent" or stationary scaffolding, of maintaining all of the scaffolding and moving it as needed during the work; that if there was negligence in furnishing and maintaining the scaffolding at the place where Royce fell, it was Gunter's negligence and not appellant's.

The patent scaffold was made in 7 feet horizontal sections with each section having a vertical height of approximately 4½ feet. It extended from the hoisting elevator to the swinging scaffold. The swinging scaffold was hung by cables from steel beams supported by portions of the wall already built. As the work progressed the swinging scaffold could and was to be raised on a level with the patent scaffold each time the latter was raised. However, when Royce fell the swinging scaffold was 18 inches to 2 feet higher than the patent scaffold. Boards were placed at the juncture of the two scaffolds to serve as a ramp for going from one to the other. There is evidence supportive of a finding that Royce fell at this point. It is clear from the evidence that there was no guard rail or curbing at the place where he fell. The walkway of the patent scaffold was 4 feet wide and the swinging scaffold 7½ or 8 feet wide. While the evidence is in conflict as to whether there was a guard rail on the swinging scaffold, there is ample evidence supporting a finding that there was no guard rail of any kind around either scaffold, except where the patent scaffold connected with the hoisting elevator.

There is no dispute that the patent scaffold was actually constructed by the appellant; as was the swinging scaffold. There is evidence, too, from which the jury could find that appellant raised the scaffolds as needed.

As we see it, we do not have here a case where an employee of an independent subcontractor is injured by an unsafe appliance furnished by such subcontractor. Instead, the general contractor undertook to furnish all of the scaffolding for use by the subcontractor and his employees. And there is evidence from which the jury could find that appellant also undertook the moving and maintaining of the scaffolding where Royce fell. In this situation, the

applicable principle is thus stated in 35 Am. Jur., Master and Servant, § 529, pp. 957–958:

"While, as a general rule, injury which has been occasioned by an instrumentality is not chargeable to one who has parted with possession of and control over the machine or appliance, .a person who has undertaken to furnish an appliance for the use of the employee of another is deemed to have .assumed a duty to furnish a proper and safe appliance; and a negligent performance of such a duty, resulting in injuries to one engaged in doing the work or lawfully using the appliance, imposes a liability on the person so furnishing the same for injuries sustained in consequence of such negligence. The obligation does not depend on a contractual relation between the person injured and the person whose negligence causes the injury, but on a failure to perform a duty assumed by one which results in injury to another. In order that a recovery may be sustained, it must appear, of course, that responsibility for the condition of the offending machine or appliance was chargeable to the defendant."

·See, also, 65 C.J.S. Negligence § 70, p. 562.

We think there was evidence sufficient to support a finding of appellant's negligence in furnishing and maintaining the scaffolding at the place where Royce fell. ·That is, the evidence presented a question for the jury as to whether appellant failed to use ordinary care to see that the scaffolding was in a reasonably safe condition for the use of decedent, an invitee, in the manner and to the extent he was invited to ·use it. See Foster & Creighton Co. v. St. Paul Mercury Indemnity Co., 264 Ala. 581, .588, 589, 590, 88 So.2d 825; Foreman v. Dorsey Trailers, Inc., 256 Ala. 253, 256, 54 :So.2d 499; Day & Sachs v. Travelers' :Ins. Co., 223 Ala. 558, 562, 137 So. 409;

Sloss-Sheffield Steel & Iron Co. v. Bibb, 164 Ala. 62, 68–69, 51 So. 345; Lookout Mountain Iron Co. v. Lea, 144 Ala. 169, 175, 39 So. 1017; Campbell v. Lunsford, 83 Ala. 512, 515, 3 So. 522; Revels v. Southern California Edison Co., 113 Cal.App.2d 673, 248 P.2d 986, 989, 990; Sun Oil Co. v. Pierce, 5 Cir., 224 F.2d 580, 585; McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 393; Gambella v. John A. Johnson & Sons, 285 App.Div. 580, 140 N.Y.S.2d 208, 210, 211.

For a collection of cases on the question before us, see Annotation, General Contractor's Liability for Injuries to Employees of Other Contractors, 20 A.L.R. 2d 868.

It was not error to refuse appellant's requested affirmative charge. As said in McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135, 139:

"It is only where there is no evidence tending to establish plaintiff's case that the court may direct a verdict for defendant. * * * If there is evidence reasonably affording an inference adverse to the right of recovery by the party asking the general charge * *, or from which the jury might draw an inference adverse to such party, the general charge should not be given * * *. The jury may draw such inferences from the facts proved as they believe reasonable * * *; and if in any aspect of the case the plaintiff was entitled to recover, and the jury believed the evidence tending to support such phase, the general charge should not be given for defendant * * *; and in determining the propriety of the general charge the evidence offered by the party against whom it is given must be accepted as true. * * *"

We do not understand appellant to insist, on this appeal, that appellee is barred from recovery because of his or Royce's contributory negligence.

## V.

 Appellant charges error in the refusal of his requested charge No. 26 as follows:

"The Court charges you that in the event you should award the plaintiff any damages in this case then such damages are for his exclusive benefit and neither the mother of Royce F. Pierce nor his brothers or sisters would have any claim thereto or any portion thereof."

Assuming, without deciding, the propriety of such charge in a case of this kind, it was not error to refuse it for the reason that it "was substantially and fairly given to the jury in the court's general charge." Code 1940, Tit. 7, § 273; Smith v. Lawson, 264 Ala. 389, 393, 88 So.2d 322; Atlantic Coast Line R. Co. v. French, 261 Ala. 306, 313, 74 So.2d 266.

## VI.

The only ground of the motion for a new trial calling for discussion concerns the excessiveness of the verdict.

 The damages recoverable under § 119, Tit. 7, Code 1940, are entirely punitive and are based on the culpability of the defendant and the enormity of the wrongful act. As said in Mobile Light & R. Co. v. Nicholas, 232 Ala. 213, 222, 167 So. 298, 305:

"While juries, in the assesssment of punitive damages, are given a discretion in determining the amount of the damages, this discretion is not an unbridled or arbitrary one, but 'a legal, sound and honest discretion.' In arriving at the amount of damages that should be assessed, due regard should be had to the enormity or not of the wrong, and to the necessity of preventing similar wrongs. In short, the punishment, by way of damages, is intended not alone to punish the wrongdoer, but as a deterrent to others similarly minded."

 On consideration of all the circumstances shown by the evidence, and the incidents of the trial, we entertain the view that the ground of the motion for a new trial charging excessiveness of the verdict was well taken. Accordingly, a judgment will be entered here that unless appellee files with the clerk of this court a remittitur within thirty days, reducing the judgment to $30,000, the judgment of the trial court will stand reversed. If such remittitur is duly filed, the judgment for $30,000, with interest from the date of the judgment in the circuit court, will stand affirmed. See United States Fidelity & Guaranty Co. v. Millonas, 206 Ala. 147, 154, 89 So. 732, 29 A.L.R. 520; Montgomery Light & Water Power Co. v. Thombs, 204 Ala. 678, 684, 87 So. 205; Code 1940, Tit. 7, § 811.

Affirmed conditionally.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.