156 N.J. Super. 215 (1978)
383 A.2d 753
ROBERT SATZINGER, PLAINTIFF,
v.
MARY SATZINGER, ADMINISTRATRIX OF THE ESTATE OF KATHERINE SATZINGER, AND ADMINISTRATRIX AD PROSEQUENDUM, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 19, 1978.
*217 Mr. Theodore D. Parsons, Jr., for plaintiff (Messrs. Labrecque, Parsons & Bassler, attorneys).
Mr. William F. Dowd for defendant (Messrs. Stout, O'Hagan & Dowd, attorneys).
YACCARINO, J.S.C.
This case raises the issue of whether a cash settlement recovered pursuant to the uninsured motorist provision of the defendant's insurance policy, as a consequence of the death of the parties' minor daughter, is to be considered the proceeds of an insurance contract payable to defendant, or damages distributable under the Wrongful Death Act.
This matter was heard on the return date of an order to show cause why defendant should not be ordered to account to plaintiff for a distributive share of the funds recovered in a wrongful death action. Based upon the affidavits submitted in this action, the court makes the following findings of fact: On August 3, 1973, Katherine Satzinger, minor daughter of plaintiff and defendant, was killed in an automobile accident. At the time of the fatal crash, decedent was covered under the uninsured motorist provision of her mother's automobile insurance policy. Defendant, divorced wife of plaintiff, was appointed general administratrix of her daughter's estate and granted administration ad prosequendum for a wrongful death action. Defendant herein instituted a wrongful death action, joining as defendants, among others, the deceased *218 driver of the uninsured vehicle in which her daughter was a passenger, and her own insurance carrier, New Jersey Manufacturers Insurance Company. On November 14, 1975 the trial judge in that action entered an order dismissing the complaint against New Jersey Manufacturers Insurance Company on the grounds that it had been improperly joined as a party to the liability claim. The trial proceeded on the issue of liability only, and on March 17, 1977 judgment was entered holding the deceased and uninsured driver, Earl Levers, solely responsible for the death of Katherine Satzinger.
Shortly thereafter defendant negotiated a $12,500 settlement with her insurance company, New Jersey Manufacturers, pursuant to the maximum $15,000 uninsured motorist coverage of her policy. Defendant's affidavit states that acceptance of the settlement "obviated the necessity of proceeding with a damage trial." Thus, on June 28, 1977 defendant withdrew her than pending damage complaint "in light of the settlement reached with [her] own insurance carrier."
Decedent was survived by her mother and father and four older sisters. Each of the sisters executed a renunciation of all right and interest in the settlement proceeds in favor of her mother, defendant Mary Satzinger. Plaintiff claims that under the Wrongful Death Act, N.J.S.A. 2A:31-4, and the intestate succession statute, N.J.S.A. 3A:4-4, he is entitled to a one-sixth (1/6) share of the net proceeds of the settlement between defendant and her insurance carrier.
Plaintiff further demands reimbursement from defendant for the $1,050 that he expended toward his daughter's funeral expenses. The total cost of the funeral and burial was $2,190.
It is defendant's position that all monies received were the result of her contract of insurance with New Jersey Manufacturers (NJM) and were "independent and wholly separate from the maintenance of any wrongful death action." Defendant maintains that all proceeds are payable to *219 her because of the happening of an event for which she had voluntarily, and without assistance from plaintiff, purchased insurance; namely, the demise of a member of her household by an uninsured motorist. Defendant concludes that "it is virtually as if [plaintiff] sought to recover on a life insurance policy maintained on the life of the decedent by one of her sisters * * *."
Both parties and the court agree that this is a case of first impression in the State of New Jersey. However, having carefully considered the uninsured motorist statute, the language of the insurance policy and the case law in this and other jurisdictions, the court does not hesitate in holding that the proceeds of a settlement agreement between a policy holder and her own insuror, reached pursuant to the uninsured motorist provision of the policy, represent damages caused by a negligent and uninsured motorist. The court further holds that in the case of death of an insured, the settlement proceeds are to be distributed among those persons who are entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same.
Initially, it must be understood that defendant's purchase of uninsured motorist protection was not voluntary. Her insurance policy went into effect on January 12, 1973. As of January 1, 1973 no automobile liability policy or renewal of such policy could issue unless it included uninsured motorist coverage. N.J.S.A. 17:28-1.1; Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 284 (1974); Walkowitz v. Royal Globe Ins. Co., 149 N.J. Super. 442, 445 (App. Div. 1977). According to the language of the statute, this mandatory coverage is
* * * for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, * * * because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or *220 hit and run automobile anywhere within the United States or Canada. [Emphasis supplied]
The fact that these insurance proceeds represent damages caused by the uninsured motorist is further manifested by the terms of defendant's insurance policy. Paragraph 1 of the policy provides that the insurance company "will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle * * *." The standard uninsured motorist provision states that the determination of whether an insured is legally entitled to damages is to be made by agreement between the insured or his legal representative and the insuror, or by arbitration. Defendant's policy contained such a provision, but she chose instead to establish legally entitlement through a wrongful death action. Once judgment was entered holding the uninsured motorist solely responsible for the death of the insured, the insurance company settled with defendant in the sum of $12,500 and the pending damage action against the uninsured motorist's estate was withdrawn.
The purpose of the uninsured motorist statute, N.J.S.A. 17:28-1.1, is to provide "coverage for such damage as the insured may be legally entitled to recover from the uninsured motorist." Government Employees Ins. Co. v. Shara, 137 N.J. Super. 142, 149 (Ch. Div. 1975); State Farm Mut. Auto v. Toro, 127 N.J. Super. 223, 229 (Law Div. 1974). In this context, the term "legal entitlement" is "synonymous with the factual issue of fault." Selected Risks Ins. Co. v. Dierolf, 138 N.J. Super. 287, 293 (Ch. Div. 1975). Thus, our courts have uniformly held that when the question of the insured's "legal entitlement" is submitted to arbitration, the only issues to be determined are "the uninsured motorist's negligence and the amount of damages." Keystone Ins. Co. v. Bowman, 138 N.J. Super. 544, 548 (App. Div. 1976); Selected Risks Ins. Co. v. Schulz, 136 N.J. Super. 185, 187 (App. Div. 1975); Government Employees *221 Ins. Co. v. Bovit, 142 N.J. Super. 268, 273-74 (App. Div. 1976), certif. den., 71 N.J. 502 (1976); Selected Risks Ins. Co. v. Dierolf, supra.
The courts in other states have clearly held that an insured's right to insurance proceeds from an uninsured motorist provision of a policy are dependent upon the ascertainment of the legal liability of the uninsured motorist. Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580, 583 (Sup. Ct. 1968); Harthcock v. State Farm Mut. Auto. Ins. Co., 248 So.2d 456, 459 (Miss. Sup. Ct. 1971); DeLuca v. Motor Vehicle Acc. Indem. Corp., 17 N.Y.2d 76, 268 N.Y.S.2d 289, 292, 215 N.E.2d 482, 484 (Ct. App. 1966); American Universal Ins. Co. v. Ranson, 59 Wash.2d 811, 370 P.2d 867, 868 (Sup. Ct. 1962); Levy v. American Auto. Ins. Co., 31 Ill. App.2d 157, 175 N.E.2d 607, 610 (App. Ct. 1961). Inasmuch as almost all uninsured motorist statutes are essentially similar in form to the New Jersey statute, these judicial decisions from other states may be consulted by us for guidance. Motor Club of America Ins. Co. v. Phillips, supra 66 N.J. at 286.[1] Therefore, based upon the clear language of N.J.S.A. 17:28-1.1, the terms of defendant's policy, our court decisions interpreting the phrase "legal entitlement," and the holdings of other state courts, this court rules that monies received by an insured from her own insurance carrier, pursuant to the uninsured motorist provision of the policy, represent damages suffered by the insured as a result of the negligence of an uninsured motorist and not proceeds of a contract payable to *222 the premium payer upon the happening of a contingent event. In the instant case defendant's receipt of the insurance proceeds was not independent of the wrongful death action, but rather was the result of a judgment holding that her daughter's death was caused by the negligence of the uninsured motorist.
There remains, however, another issue, which neither party addressed in its brief or oral argument. Specifically, who is the "insured" to whom damages are payable? Both defendant and her deceased daughter were insured under the terms of the policy. Concededly, both were damaged by the negligence of the uninsured motorist. Katherine Satzinger lost her life, defendant lost her daughter. Should the damages, therefore, be payable to the legal representative of the deceased insured or to the surviving insured who has suffered the loss of a child?
Certainly, if defendant's daughter had only been injured in the accident, no one could seriously contend that the insurance proceeds would be payable to the defendant mother. The monies would, of course, be paid to the daughter to recompense her for the bodily injury she sustained. It necessarily follows that if the injured party were a nonhousehold member who was insured by virtue of his occupancy of defendant's car, the damages would be payable to the passenger suffering bodily injury and not to the unrelated defendant insured. Should the result change because the insured sustaining the bodily injury has died, survived by another insured under the same policy?
The great weight of authority in other jurisdictions supports the proposition that in the case of death of an insured as a consequence of the negligence of an uninsured driver, those parties who are by statute entitled to bring a wrongful death action may recover under the uninsured motorist provision of the decedent's automobile insurance policy. Zeagler v. Commercial Union Ins. Co. of N.Y., 166 So.2d 616, 617 (Fla. Ct. App. 1964); Davis v. United States Fidel. & G. Co. of Baltimore, Md., 172 So.2d 485, 487 (Fla. *223 Ct. App. 1965); Netherlands Ins. Co. v. Moore, 190 So.2d 191, 195 (Fla. Ct. App. 1966); MFA Mut. Ins. Co. v. Lovins, 248 F. Supp. 108, 115 (W.D. Ark. 1965). This court adopts that view and holds that in this State the insurance coverage provided pursuant to N.J.S.A. 17:28-1.1 is intended to provide indemnity for damages resulting from an insured's wrongful death caused by an uninsured motorist, payable to whatever person or persons may be entitled to bring an action under the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1 et seq. Sterns v. MFA Mut. Ins. Co., 401 S.W.2d 510 (Mo. App. 1966); Brummett v. Grange Ins. Ass'n, 4 Wash. App. 979, 485 P.2d 88, 91 (App. Ct. 1971); Annotations, 26 A.L.R.3d 935 (1969); 79 A.L.R.2d 1252 (1961). Therefore, the monies received by defendant herein do not represent the damages she sustained as an "insured" on account of the injury to her daughter, an "additional insured" under the policy. Moore v. Allstate Ins. Co., 108 Ga. App. 60, 131 S.E.2d 834, 835 (App. Ct. 1963) (dictum). The settlement proceeds received by the defendant are damages suffered by and distributable among those entitled to maintain a wrongful death action.
Defendant, as mother of decedent, had no individual right to maintain an action for the wrongful death of her daughter. Schueler v. Strelinger, 43 N.J. 330, 349 (1964). Such an action is a creature of statute and as such must be maintained by an administratrix ad prosequendum for the exclusive benefit of those entitled to take intestate personal property of decedent. Kern v. Kogan, 93 N.J. Super. 459, 466 (Law Div. 1967); N.J.S.A. 2A:31-4. Our descent and distribution statute, N.J.S.A. 3A:4-4, directs that if a decedent dies without spouse or children, the intestate's property shall descend and be distributed equally among the parents and brothers and sisters. Therefore, in the instant case each parent and each surviving sister is entitled to a one-sixth share of the net settlement proceeds. Inasmuch as the four sisters have renounced their interest in *224 favor of their mother, the defendant will receive five-sixths of the proceeds.
The final issue concerns reimbursement for funeral exposures expended by plaintiff. The case law clearly establishes that a fund recovered under the Wrongful Death Act is no part of decedent's estate. The money recovered in such an action enures to those persons enumerated in the statute as a vested right. Schmoll v. Creecy, 54 N.J. 194, 200 (1969); Gottlieb v. North Jersey Street Ry. Co., 72 N.J.L. 480, 484 (E. & A. 1905); Glucksman v. Strelecki, 102 N.J. Super. 53, 58 (Law Div. 1968). Thus, in Quinn v. Koeck, 95 N.J. Super. 467, 471 (App. Div. 1967), the court ruled that the funds were not available for the payment of funeral expenses, even though assets of the decedent's estate were practically non-existent.
However, in 1968 N.J.S.A. 2A:31-5 was amended to allow a jury to award funeral expenses incurred by the deceased. In the present case, of course, we have no jury award. We have, rather, a $12,500 settlement between the insuror and the administratrix ad prosequendum. The question is whether the settlement award is to be interpreted to encompass reimbursement for plaintiff's expenditures, or whether the plaintiff is to be deemed a creditor of the deceased whose claim cannot be asserted against the fund. The court is of the opinion that the former approach is the most appropriate. The settlement award will therefore be interpreted to provide for the payment of funeral expenses prior to distribution to the descendants.
The facts indicate that the net proceeds of the settlement after deducting legal fees and expenses totalled $9,029.12. The cost of the funeral and burial was $2,190, $1,050 of which was paid by plaintiff. Defendant administratrix will therefore be directed to pay $1,050 to plaintiff as reimbursement of his expenditures for the funeral. The remaining $6,839.12, representing the net proceeds of the wrongful death settlement, is to be divided into six equal shares of $1,139.85. Defendant is to deliver one such share to plaintiff. *225 The remaining five shares, representing the balance of the settlement proceeds, are to be paid to defendant Mary Satzinger in her individual capacity.
No costs allowed.
NOTES
[1] See also: Stanton, Protection Against Uninsured Motorists in New Jersey, 3 Seton Hall L. Rev. 19 at 29 (1971), where it is noted that "coverage is restricted to sums which the insured is legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle. This phrase effectively imports into the Endorsement all the normal rules governing tort liability and damages. Accordingly, in order to collect under the Endorsement, the insured must be able to prove an automobile tort case against the uninsured motorist."