ON APPLICATION FOR REHEARING
HORNSBY, Chief Justice.
This Court’s original opinion, dated August 31, 1990, is withdrawn and the following is substituted therefor:
The sons of Mary Hawk, deceased, appeal from adverse judgments in two separate proceedings. In the first proceeding, the sons claimed that the moneys paid to Charles Hawk under uninsured motorist policies are to be distributed in accordance with the Alabama Wrongful Death Statute, Ala.Code 1975, § 6-5-410. In the second proceeding, the sons sought to have Charles Hawk removed as executor of the estate of Mary Hawk. The trial court held that as a matter of law the proceeds under certain uninsured motorist insurance policies were payable to the estate of Mary Hawk, and that such proceeds were devisa-ble as a chose in action under the last will and testament of Mary Hawk. Accordingly, the trial court entered summary judgment in favor of the defendants. We reverse the judgment in Case No. 89-644, and remand that case for disposition under our holding set out below. We remand Case No. 89-666 for further determination and findings of fact in light of our holding in Case No. 89-644.

Facts

On December 12, 1987, Mary Hawk was involved in an automobile accident that was *755 caused by an uninsured motorist. She died on January 17, 1988, as a result of injuries she received in the accident. Mrs. Hawk was survived by her husband, Charles Hawk, and her two sons, Richard and Sean Sprouse.[1] Mr. Hawk is the stepfather of Richard and Sean.
Mary Hawk died testate. She left a will devising all of her property to Charles Hawk and naming him executor of her estate. Mr. Hawk was granted letters testamentary on March 2, 1988.
Mary Hawk was an insured under automobile insurance policies issued by State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company. Those policies and their uninsured motorist coverage are set out below:
1. State Farm Mutual Automobile Insurance Policy No. 463-2879-B25-01B listed Charles Hawk as the named insured and provided uninsured motorist benefits for bodily injury in the amount of $100,000 per person or $300,000 per accident. “Insured” under this policy included both Charles Hawk and his spouse at the time of the accident, Mary Hawk.
2. State Farm Mutual Automobile Insurance Policy No. 475-8921-C05-01B listed Charles Hawk as the named insured and provided uninsured motorist benefits for bodily injury of $20,000 per person or $40,-000 per accident. “Insured” under this policy included both Charles Hawk and his spouse at the time of the accident, Mary Hawk.
3. State Farm Mutual Automobile Insurance Policy No. 458-2616-C24-01D listed Charles Hawk as the named insured and provided uninsured motorist benefits for bodily injury of $20,000 per person or $40,-000 per accident. “Insured” under this policy included both Charles Hawk and his spouse at the time of the accident, Mary Hawk.
4. State Farm Mutual Automobile Insurance Policy No. 489-7576-F05-01 listed Charles Hawk as the named insured and provided uninsured motorist benefits for bodily injury of $100,000 per person or $300,000 per accident. “Insured” under this policy included both Charles Hawk and his spouse at the time of the accident, Mary Hawk.
5. State Farm Fire and Casualty Company Policy No. S57-7091-D27-01A listed Richard Sprouse as the named insured and provided uninsured motorist benefits for bodily injury of $100,000 per person or $300,000 per accident. “Insured” under this policy included Richard Sprouse and such “relatives” as were defined in the policy, including his mother, Mary Hawk.[2]
Charles Hawk made claims against both State Farm companies for uninsured motorist benefits. State Farm paid him $340,000 in settlement of the claims. This sum represents the combined limits of all of the policies of insurance set out above. Each of these five policies contained the following payment-of-benefits provision within its uninsured motorist coverage sections:
“Payment of Any Amount Due
“We will pay any amount due:
“1. to the insured;
“2. to a parent or guardian if the insured is a minor or an incompetent person;
“3. to the surviving spouse; or
“4. at our option, to a person authorized by law to receive such payment.”

*756
Contentions in Case No. 89-644

The trial court granted the motion of the defendants, Charles Hawk and State Farm, for summary judgment on the issue of payment of the uninsured motorist benefits to Charles Hawk. Richard and Sean Sprouse do not contend that the payments to Charles Hawk were made in contravention of the policy payment provisions. The Sprouses do contend, however, that the proceeds payable pursuant to the uninsured motorist coverage of the State Farm policies are “damages” and, by the Alabama Wrongful Death Statute, Ala.Code 1975, § 6-5-410, are to be distributed in accordance with the statute of distribution. Thus, the Sprouses contend that they are entitled to a share of the uninsured motorist benefits paid to Charles Hawk.

Discussion

For summary judgment to be properly entered, there must be no genuine issue of material fact and the moving party must be entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.
Alabama Code 1975, § 6-5-410(c), provides that funds recovered in an action for wrongful death are “not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.” The Sprouses argue that if there had been no uninsured motorist coverage available in this case, there would have been only a wrongful death action for recovery of punitive damages under § 6-5-410, and, thus, that the amounts recovered from State Farm in settlement of the dispute stand in lieu of the punitive damages recoverable in an action based on a wrongful death. The Sprouses contend that the Wrongful Death Statute and the Uninsured Motorist Statute, when read together, require that amounts paid under uninsured motorist coverage should be distributed according to § 6-5-410. We agree.
The question in this case is not whether an uninsured motorist claim is a contract action; rather, the issue is how uninsured or underinsured motorist insurance proceeds are to be distributed when they are being paid as the result of the death of an insured.
The Uninsured Motorist Statute provides that the damages recoverable are those for which the uninsured motorist is legally responsible. Auto-Owners Ins. Co. v. Hudson, 547 So.2d 467 (Ala.1989). The Uninsured Motorist Statute provides:
“No • automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 32-7-6, under provisions approved by the commissioner of insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage ...”
Ala.Code 1975, § 32-7-23 (emphasis added).
Except for the Wrongful Death Statute, there could be no damages of any kind recovered for wrongful death, because no right to damages because of wrongful death existed under the common law. Breed v. Atlanta, B. & C.R.R., 241 Ala. 640, 4 So.2d 315 (1941). The Wrongful Death Statute is entirely a creation of the legislature. In the case at hand, the only damages recoverable result from the fact that Mary Hawk was killed, and the only action available to redress the wrong is vested by statute in the personal representative. That is, in order for the personal representative to recover any damages from the tort-feasor, whether by way of settlement or by civil action, a claim must be made under the Alabama Wrongful *757 Death Statute. Under the Uninsured Motorist Statute, the insurer’s contractual obligation is “for the protection of persons insured ... who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.” Ala.Code 1975, § 32-7-23. In this case, that payment could only be in lieu of, and based on an entitlement to, damages under the Wrongful Death Statute.[3]
In Satzinger v. Satzinger, 156 N.J.Super. 215, 383 A.2d 753 (1978), a case similar to the present one, the New Jersey court addressed whether a settlement recovered under an uninsured motorist provision by a mother for the death of her minor daughter was to be considered as proceeds of an insurance contract payable to the mother or as damages distributable under the New Jersey Wrongful Death Act. The court adopted the view that the uninsured motorist statute was “intended to provide indemnity for damages resulting from an insured’s wrongful death caused by an uninsured motorist, payable to whatever person or persons may be entitled to bring an action under the New Jersey Wrongful Death Act.” Id. at 223, 383 A.2d at 757.
The court in Satzinger determined that the money received by the mother did not represent damages for injuries or loss she sustained as an insured, but, rather, that the daughter was the true insured. The court reasoned that if the daughter had survived she would have been the one to receive the proceeds. The court also focused on the fact that the mother’s receipt of the proceeds was not independent of the wrongful death action because the receipt of the proceeds was the result of a judgment holding that the daughter’s death was caused by the negligence of the uninsured motorist. Consequently, the court held that the insurance proceeds were distributable among those entitled to maintain and recover in a wrongful death action. The mother had no individual right to maintain a wrongful death action, because such an action was created by a statute that allowed only the administrator to maintain the action and provided that the recovery would be distributed among those entitled to take the intestate personal property of the decedent.
Like the mother in Satzinger, Mary Hawk, not Charles Hawk, was the true insured under the insurance policies. The only benefits paid by the insurers in this case were paid in lieu of damages in a wrongful death action against the uninsured tort-feasor.[4] Although no wrongful death action was brought against the uninsured motorist to determine liability, the uninsured motorist insurance proceeds represent damages that would pass under the Wrongful Death Statute. Additionally, Charles Hawk would not be able to bring an action in his individual capacity under the Wrongful Death Statute, but could sue only in a representative capacity. Ala.Code 1975, § 6-5-410.
We find that the only basis for payment under the uninsured motorist policies was the existence of a wrongful death claim held by Mary Hawk’s personal representative. Accordingly, the proceeds received under the insurance policies represented damages recoverable under the Wrongful Death Statute. Because we hold that those proceeds should be distributed in accordance with the Wrongful Death Statute, we reverse the trial court’s summary judgment and remand the case.

Contentions in Case No. 89-666

In this case, the Sprouses contend that the trial court erred in denying their mo *758 tion to have Charles Hawk removed as executor of the estate of Mary Hawk. Charles Hawk is the sole beneficiary under the last will and testament of Mary Hawk.
We note that the decision whether to remove a person as an executor of an estate is left to the discretion of the trial court. This Court's review on appeal is limited to determining whether the trial court abused its discretion. Jones v. McGuirt, 416 So.2d 970 (Ala.1982). Because our holding in Case No. 89-644 clarifies the law that the trial court relied upon in ruling in Case No. 89-666, and because it appears that the trial court’s understanding of the law in that regard was in error, we remand Case No. 89-666 for further findings of fact by the trial court and further consideration of the question whether Charles Hawk should be removed as executor of Mary Hawk’s estate.
89-644 — APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
89-666 — APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REMANDED.
JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.

. At the time of Mary Hawk’s death Sean Sprouse was a minor. The record further indicates that Richard Sprouse had reached the age of majority at the time he filed his complaints, and that he and Sean were living with their mother at the time of the accident and at the time of her death.

. The Uninsured Motor Vehicle sections of all of the policies define an "insured” as follows:
"Insured — means the person or persons covered by the uninsured motor vehicle coverage.
“This is:
“1. the first person named in the declarations;
"2. his or her spouse ■
"3. their relatives; and
"4. any other person while occupying: ...
"5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above.”

. Additionally, all of the policies in this case provide:
"We [the insurer] will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle."

. The policies provide:

“Deciding Fault and Amount

"Two questions must be decided by agreement between the insured and us [the insurer]:
"1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and
"2. If so, in what amount?"