This case concerns a wrongful-death action brought in the Baldwin Circuit Court by Robin McElrath ("the mother"), as mother and next friend of her deceased minor daughter, Magen K. Nix. The two issues presented for review are whether the mother, a divorced parent, had the exclusive right to commence the wrongful-death action, and whether she had the exclusive right to the proceeds from this action.
 Facts and Procedural History
Magen was born on December 15, 1984, during the marriage of the mother and Thomas Wayne Dixon. The mother and Dixon subsequently divorced, and the mother later married Jack D. Nix, Jr. After the marriage, Nix petitioned the Probate Court of Mobile County to adopt his stepchild, Magen. That petition was granted on December 17, 1992, and a final judgment of adoption was rendered creating a parent-child relationship between Nix ("the father") and Magen and legally changing Magen's name to Magen Kristen Nix.[1]
Approximately eight years later, the mother and the father divorced. The terms of the divorce judgment relevant to this action are set out and discussed below.
On September 4, 2003, shortly after enrolling as a freshman at Auburn University, Magen and her friend Robyn Kendall visited Fat Daddy's Fine Foods, a bar in Auburn. They were allegedly served alcoholic beverages even though both were minors. Magen and Robyn subsequently left Fat Daddy's in Robyn's car, which Robyn was driving, and were involved in an automobile accident in which both girls were killed.
On December 8, 2003, the mother filed the underlying action against Robyn Kendall, by and through her mother, Donna Kendall, and against AIU Insurance Company, the mother's uninsured/underinsured-motorist ("UM/UIM") insurance carrier. Later, the mother amended her complaint to add as defendants AL-LU Enterprises, Inc., d/b/a Fat Daddy's Fine Foods, under a dram-shop theory of liability.
On June 4, 2004, the defendant Donna Kendall, as mother of Robyn Kendall, deceased, by and through her automobile insurance carrier State Farm Insurance, filed a motion to interplead the available proceeds of her automobile liability insurance policy. The trial court granted Kendall and State Farm's motion to allow interpleader of the funds on June 9, 2004. *Page 1109 
On July 12, 2004, the mother filed a motion for disbursement of the interpleaded funds, requesting that attorney fees be paid to her counsel and that she receive the balance of the interpleaded funds.
Although the record is silent as to the particulars, at some point the father was appointed the administrator of Magen's estate, and he then entered an appearance in the Baldwin Circuit Court wrongful-death action, moving to intervene as an indispensable party pursuant to Rule 19, Ala. R. Civ. P. He also objected to the disbursement of interpleaded funds, and he filed a cross-motion for one-half of those funds. The mother objected to the father's intervention and to his cross-motion to divide the interpleaded funds.
The trial court set all pending motions for hearing on August 31, 2004, and after the hearing took all matters under submission. The mother and the father filed a joint stipulation of undisputed facts on October 6, 2004, and the trial court entered the following order on October 12, 2004:
 "This matter came on for argument on the motion for disbursement of interpled funds and was taken under submission by the court on August 31, 2004. On October 6, 2004, the [mother] and the [father] filed a joint stipulation of undisputed facts. Upon consideration of the foregoing, the court is of the opinion that the following order is due to be entered. It is therefore ORDERED, ADJUDGED and DECREED by the Circuit Court of Baldwin County, Alabama, as follows:
 "1. It is well established under the Alabama law that the custodial parent of a minor is entitled to maintain a wrongful death action after the minor's death is caused by the unlawful conduct of another. There does not appear to be any Alabama case declaring the rights of the parents to maintain a wrongful death action when the parents were vested with the joint legal custody of the minor.
 "2. In view of the apparent lack of Alabama authority, the court is of the opinion that the better policy is to allow the action to be maintained by the parent who first files the action. Moreover, in this particular case, the parent who first filed the action was the parent with whom the minor actually resided prior to entering college. Therefore, under either the race to the courthouse rule or the parent exercising the physical custody of the minor rule, the [mother] would be entitled to maintain the action in this case and to receive the settlement proceeds.
 "3. Therefore, the [father's] claim to a share of the settlement proceeds be, and the same is hereby denied. The court directs the Clerk to pay all of the interpled funds to the plaintiff, Robin McElrath, as mother and next friend of [Magen] K. Nix, within ten days after this order becomes final. Should any appeal be taken from this order, the Clerk is directed to maintain the interpled funds in the interest bearing account until a Certificate of Judgment is issued by the appellate court having jurisdiction over the matter."
The father filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion to alter or amend its judgment, which the trial court denied. The UM/UIM claim and the claim based on dram-shop liability remain pending.[2] The trial court certified its judgment as *Page 1110 
final pursuant to Rule 54(b), Ala. R. Civ. P. The father appealed.
 Standard of Review
"The trial court in this case applied the law to undisputed, stipulated facts. Our review therefore is de novo.
 "`When reviewing a case in which the trial court sat without a jury and heard evidence in the form of stipulations, briefs, and the writings of the parties, this Court sits in judgment of the evidence; there is no presumption of correctness. Old Southern Life Ins. Co. v. Williams, 544 So.2d 941, 942
(Ala. 1989); Craig Constr. Co. v. Hendrix, 568 So.2d 752, 756 (Ala. 1990). When this Court must determine if the trial court misapplied the law to the undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court. State Dep't of Revenue v. Garner, 812 So.2d 380, 382 (Ala.Civ.App. 2001); see also Ex parte Graham, 702 So.2d 1215
(Ala. 1997). In this case the trial court based its decision upon the stipulations, briefs, writings, and arguments of the parties' attorneys. No testimony was presented. Therefore, we must sit in judgment of the evidence, and the trial court ruling carries no presumption of correctness.'"
American Res. Ins. Co. v. H H Stephens Constr,Inc., 939 So.2d 868, 872-73 (Ala. 2006) (quoting BeanDredging, L.L.C. v. Alabama Dep't of Revenue,855 So.2d 513, 516-17 (Ala. 2003)).
 Analysis
A. Who has the right to commence a civil action based on the minor's death?
Both the father and the mother-persuasively argued at the trial level as to which of them, as divorced parents given "joint custody," have the right to maintain a wrongful-death action, an action for UM/UIM benefits, and a dram-shop claim on behalf of their deceased daughter, and, secondarily, whether that right is exclusive. However, the father's statement that "because both the [UM/UIM] claim as well as the dram shop claim have since similarly been settled [referring to the already settled claim against Robyn Kendall's insurance carrier], the issue of whether [the father] was entitled to act as a co-plaintiff in prosecuting those claims based on his joint legal custodial status as set forth in the first and second paragraph of the Trial Court's Order is now moot." (The father's brief, p. 16.) The father, therefore, although devoting a substantial portion of his brief to addressing this issue, has conceded that the issue is now moot.
Notwithstanding the father's concession of the mootness of the issue of who had the exclusive right to bring the action, the mother, who initiated the action, must have standing to prosecute this action. "Standing, like jurisdiction, is necessary for any valid legal action. To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit. "Doremus v.Business Council of Alabama Workers' Compensation Self-InsurersFund, 686 So.2d 252, 253 (Ala. 1996). The judgment divorcing the parties provides the following regarding custody:
 "1. The parties agree that [the mother] and [the father] shall be awarded joint custody of the two minor children, namely Magen Kristen Nix, born on December 15, 1984, and [B.M.N.], born on December 1, 1992. [The mother] shall be awarded primary custody of the minor children, and [the father] shall be awarded, secondary custody of the minor *Page 1111 
children. The parties shall cooperate regarding any major decisions to be handled regarding the children's education, health, welfare, or religion. Additionally, [the father] is allowed access to the medical, dental, and academic records of the minor children."
(Emphasis added.)
Alabama's statute pertaining to the wrongful death of a minor child, Ala. Code 1975, § 6-5-391, provides, in part:
 "(a) When the death of a minor child is caused by the wrongful act, omission, or negligence of any person, persons, or corporation, or the servants or agents of either, the father, or the mother as specified in Section 6-5-390, or, if the father and mother are both dead or if they decline to commence the action, or fail to do so, within six months from the death of the minor, the personal representative of the minor may commence an action.
 "(b) An action under subsection (a) for the wrongful death of the minor shall be a bar to another action either under this section or under Section 6-5-410."
(Emphasis added.) Section 6-5-390 provides:
 "A father or a mother, provided they are lawfully living together as husband and wife, shall have an equal right to commence an action for an injury to their minor child, a member of the family; provided, however, that in the event such mother and father are not lawfully living together as husband and wife, or in the event legal custody of such minor child has been lawfully vested in either of the parties or some third party, then and in either event the party having legal custody of such minor child shall have the exclusive right to commence such action."
(Emphasis added.)
The divorce judgment awarded the mother and father "joint custody" of their minor children, including Magen. The mother was awarded "primary custody"; the father was awarded "secondary custody." The father was also awarded certain specified visitation rights with the children.
The parties' divorce was granted April 19, 2001, well after the legislature enacted Alabama's Joint Custody Act, § 30-3-150
et seq., Ala. Code 1975.[3] Although the terms "primary custody" and "secondary custody" are not defined in the act, the definitional section, § 30-3-151(1), defines "joint custody" as "joint legal custody and joint physical custody." This terminology does not fit squarely with that portion of §6-5-390 that provides that "the party having legal custody of such minor child shall have the exclusive right to commence such action." Given the father's concession as to the mootness of the issue of who has the exclusive right to bring suit, however, that issue is no longer before the Court, and we pretermit any further discussion except to say that the mother, under the facts before us, had standing to bring this action.
B. Who is entitled to the interpleaded funds?
The mother first argues that based on this Court's ruling in Carter v. Beaver, 577 So.2d 448 (Ala. 1991), she "should be vested with . . . the exclusive right to recovery of allproceeds from the action." (The mother's brief, pp. 6 and 10) (emphasis added).
The facts in Carter are similar to those found here. Clayton Carter, Jr., and *Page 1112 
Mary Beaver were divorced. Rather than having joint custody, however, Mary was awarded sole custody of their minor children, including their minor son, Christopher Carter, who was killed in an automobile accident. Mary filed a wrongful-death action and received an amount in settlement of the action. Carter filed a declaratory-judgment action asking that the trial court order the settlement proceeds distributed according to the laws of descent and distribution. The trial court ruled that Mary was entitled to all the proceeds, and Carter appealed.
Carter argued that even though Mary, having sole custody, had the exclusive right to bring the action, the settlement proceeds should be distributed pursuant to § 6-5-410, which states in subsection (c) that "[t]he damages recovered [from a wrongful-death action] are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions." After reciting the history of wrongful-death actions in Alabama, this Court rejected Carter's argument, stating:
 "Before the 1979 amendment that allowed both a father and a mother to recover for the wrongful injury or death of a child, the courts looked to the common law to see who was to receive the benefits awarded in such an action. The common law recognized the obligation of the father touching the maintenance, education, and care of his family, and in return, the right of the father to the services of the child. In recognition of the father's right to the services of his child, he was given the sole right to bring the wrongful death suit. Because the father had the exclusive right to bring suit, he also had the exclusive right to the proceeds. Mattingly v. Cummings, 392 So.2d 531
(Ala. 1980); Jones v. Jones, 355 So.2d 354
(Ala. 1978); Thorne v. Odom, 349 So.2d 1126 (Ala. 1977); Peoples v. Seamon, 249 Ala. 284, 31 So.2d 88 (1947). Prior to the 1979 amendment, when the father was dead, had deserted the family, or had become insane or otherwise unable to perform his parental obligations, he lost the right of action, and a right of action then accrued to the mother. Ex parte Roberson, 275 Ala. 374, 155 So.2d 330 (1963). But the mother had a right of action only when the father had lost his right to bring the action. When the mother accrued the right to bring suit, she also accrued the exclusive right to the proceeds from the action.
 "The 1979 amendment to § 6-5-391 allows a mother an equal right to bring an action for the wrongful death of her child. A mother no longer has to wait for the father to abandon his right to bring an action before she is allowed to bring suit. The cause of action now belongs to both parents, and if one declines or is unable to commence the action, the other parent may bring the action. Lee v. Lee, 535 So.2d 145 (Ala. 1988). However, the amendment also made it clear that, if the parents are not living together, the custodial parent has the exclusive right to bring the wrongful death action. Carter does not dispute that the custodial parent has the exclusive right to bring the action, but he still insists that the legislature intended that he should share in any recovery. He argues essentially that the provisions of § 6-5-410, as they apply to the distribution of wrongful death proceeds, should apply.
 "It has long been settled that if a deceased child leaves a parent in the exercise of parental care, a wrongful death action based on the child's death is controlled entirely by § 6-5-391, and § 6-5-410, the section providing for an action for the wrongful death of an *Page 1113 
adult, does not apply. Adkison v. Adkison, 46 Ala.App. 191, 239 So.2d 555, reversed on other grounds, 286 Ala. 306, 239 So.2d 562 (1970); Peoples v. Seam-on, 249 Ala. 284, 31 So.2d 88 (1947).
 "Carter cites Coleman v. Stitt, 514 So.2d 1007
(Ala. 1987), and especially the special concurrence of Mr. Justice Beatty in that case, in support of his argument. In Coleman, this Court recognized the fact that a father or a mother, but not both, could bring an action for the wrongful death of a child, and Mr. Justice Beatty, in his special concurrence, did state that `the father and the mother, however, now have an equal right to commence such an action, and, it follows, an equal right to any recovery of the proceeds.' Coleman is distinguishable. There, both the father and the mother had a right to bring the action, because they were married and were living together. In this case, it is undisputed that the father and mother were divorced; therefore, the parent having the custody of the minor had the exclusive
right to bring the action.
 "Based upon the history of § 6-5-391, the cases construing that section prior to the 1979 amendment, and the cases decided after the amendment was adopted, we conclude that the legislature, in giving the custodial parent the exclusive right to sue, intended that that party also have the exclusive right to any recovery, and we so hold."
Carter, 577 So.2d at 451.
However, this Court's decision in Carter concerning which divorced parent is entitled to the proceeds from a wrongful-death action was abrogated by a 1995 amendment to Ala. Code 1975, §6-5-391, which added subsection (c):
 "(c) Any damages recovered in an action under this section shall be distributed according to the laws of intestate succession."[4]
(Emphasis added.) Over four years after Carter was decided, the legislature removed any doubt about the distribution of proceeds obtained for the wrongful death of a minor child. Therefore, the distribution of those proceeds in this case is governed by Ala. Code 1975, § 43-8-42, which provides:
 "The part of the intestate estate not passing to the surviving spouse under section 43-8-41, or the entire intestate estate if there is no surviving spouse, passes as follows:
 "(1) To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of no unequal degree, then those of more remote degree take by representation;
 "(2) If there is no surviving issue, to his parent or parents equally. . . ."
Therefore, the wrongful-death statute requires that the damages be disbursed in the manner directed by the statute governing intestate succession. Based on the facts of this case, because the deceased child had no surviving spouse (sending us to §43-8-42), and had no surviving issue, according to §43-8-42(2), the damages should be awarded to the parent or parents equally. Therefore, because there are two living parents of the deceased, the damages from the wrongful-death action based on the mother's claim against Kendall's liability insurance carrier, which have been interpleaded into court, should be divided equally between them.
Justice Houston in his dissent in Killiner v. Wilson,683 So.2d 947 (Ala. 1996), recognized the same necessary result. In *Page 1114 
that case, Justice Houston stated that even though Mr. Wilson, as the deceased's custodial parent, had the exclusive right to initiate the action based on his son's wrongful death, he did not have the right to all of the damages awarded in the action. In the dissent, Justice Houston stated:
 "After Mr. Wilson filed his action to recover for David's death, but before that action was settled, the legislature amended § 6-5-391 to provide that proceeds received from an action based on the wrongful death of a minor are to be distributed in accordance with the laws of intestate succession. Therefore, David's mother, Ms. Killiner, should have received part of these proceeds."
Killiner, 683 So.2d at 947.
This result is also consistent with the statute and caselaw addressing the wrongful death of an adult. Section 6-5-410(c), Ala. Code 1975, concerning damages for wrongful death, states: "The damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions."
This Court had the occasion to interpret § 6-5-410
in Crosby v. Corley, 528 So.2d 1141 (Ala. 1988). In that case, we stated:
 "[W]here the statutory pronouncement is distinct and unequivocal, there remains no room for judicial statutory construction. . . . The meaning of the language in § 43-8-42(2) directing that the parents of the deceased share equally in all amounts not passing to the spouse under § 43-8-41 is plain and must be given effect by the judiciary."
528 So.2d at 1142-43. Based on both wrongful-death statutes, § 6-5-391 and § 6-5-410, the result is the same; damages from a wrongful-death action are distributed based on the rules of intestate succession. In the circumstances of this case, that means that the mother and the father split the damages equally.
The mother next argues that the father is not entitled to one-half of the net proceeds received under the UM/UIM provision of the policy purchased by the mother, citing Sprouse v.Hawk, 574 So.2d 754 (Ala. 1990). However, the trial court's order was a final adjudication only as to the claim against Kendall's liability insurance carrier involving the disbursement of the interpleaded funds. Therefore, the disbursement of funds arising out the UM/UIM claim or the dram-shop-liability claim has not been addressed by the trial court.
The mother argues that Sprouse, supra, supports her petition. In Sprouse, Charles Hawk was the named insured in several State Farm automobile policies. The "insured" under the policies included Charles Hawk and his spouse at the time of the accident, Mary Hawk. Mary was killed as a result of an automobile accident caused by an uninsured motorist. Mary was survived by Charles and her two sons from a previous marriage. State Farm paid the combined limits of uninsured-motorist benefits to Charles, and the sons claimed that the moneys paid to Charles under the policies should be distributed in accordance with the Alabama wrongful-death statute. The trial court upheld the payment to Charles, ruling that the insurance benefits were devisable as a chose in action under Mary's will and that, therefore, the proceeds passed to her sole beneficiary, Charles. In reversing the judgment of the trial court, this Court stated:
 "Except for the Wrongful Death Statute, there could be no damages of any kind recovered for wrongful death, because no right to damages because of wrongful death existed under the common law. Breed v. Atlanta, B. C.R.R., 241 Ala. 640, 4 So.2d 315 (1941). The Wrongful Death Statute is entirely *Page 1115 
a creation of the legislature. In the case at hand, the only damages recoverable result from the fact that Mary Hawk was killed, and the only action available to redress the wrong is vested by statute in the personal representative. That is, in order for the personal representative to recover any damages from the tort-feasor, whether by way of settlement or by civil action, a claim must be made under the Alabama Wrongful Death Statute. Under the Uninsured Motorist Statute, the insurer's contractual obligation is `for the protection of persons insured . . . who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.' Ala. Code 1975, § 32-7-23. In this case, that payment could only be in lieu of, and based on an entitlement to, damages under the Wrongful Death Statute."
Sprouse, 574 So.2d at 756-57. Therefore, although Sprouse is cited by the mother, this Court's holding in Sprouse actually supports the father's argument.
Finally, the mother argues that allowing the father to collect benefits under a policy of insurance purchased by his ex-wife would constitute unjust enrichment, citing Avis Rent A CarSystems, Inc. v. Heilman, 876 So.2d 1111 (Ala. 2003). AvisRent A Car was an appeal in a class action in which one class claim certified by the trial court was based on a theory of unjust enrichment. In holding that trial court was in error in certifying the unjust-enrichment claims as a class action, the Court quoted Battles v. Atchison, 545 So.2d 814
(Ala.Civ.App. 1989), in stating that "`the doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.'" 876 So.2d at 1123
(quoting Battles, 545 So.2d at 815). Nothing in AvisRent A Car disputes the holding in Sprouse that UM/UIM benefits recovered in a wrongful-death action represent damages recoverable under the Alabama wrongful-death statute. Hence, there can be no argument that the father would be unjustly enriched by receiving one-half of the UM/UIM benefits.
 Conclusion
The judgment of trial court denying the father's claim for one-half of the interpleaded funds is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, HARWOOD, and STUART, JJ., concur.
[1] This adoption proceeding made Magen the legal daughter of Jack D. Nix., Jr., and the mother. However, for purposes of intestate succession there is no distinction between an adoptive father and a biological mother. See Ala. Code 1975, § 43-8-48, which provides in pertinent part:
 "If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:
 "(1) An adopted person is the child of an adopting parent and not of the natural parents. . . .
Of course, the adoption did not affect the mother's status for purposes of intestate succession; she consented only to the adoption of Magen by her husband, relinquishing no parental rights of her own.
[2] According to the father's brief, the UM/UIM claim and the claim based on dram-shop Iiability have been settled.
[3] Act No. 96-520, Ala. Acts 1996, effective January 1, 1997.
[4] Act No. 95-774, Ala. Acts 1995, effective August 8, 1995.